DETERMINED IN

# THE SUPREME COURT

OF THE

## TERRITORY OF ARIZONA,

### JANUARY TERM, 1876.

---

## PEDRO CHARAULEAU *v.* RICHARD WOFFENDEN.

No ACKNOWLEDGMENT OF DEED IS NECESSARY TO PASS TITLE to the
property conveyed by it.

DEED THOUGH DEFECTIVELY ACKNOWLEDGED, MAY BE GIVEN IN EVIDENCE
as against the grantor, or any other party not a purchaser.

WIFE TWENTY-ONE YEARS OF AGE MAY CONVEY HER SEPARATE ESTATE in
precisely the same mode that she could if unmarried, and her acknowl-
edgment of a deed does not need to be different in form from that of
other persons.

RENTS AND PROFITS OF WIFE'S SEPARATE PROPERTY are her separate
property, and if she invests them in the purchase of other property, the
property so purchased will be separate property, under her sole and
exclusive control.

PRESUMPTION THAT PROPERTY CONVEYED TO WIFE FOR MONEYED CONSID-
ERATION is common property, may be overcome by proof that the prop-
erty was purchased with her separate funds. And for the purpose of
showing that such property was her separate property, evidence of the
fact that her husband stood by while she was negotiating for its sale,
without making any objection to the negotiation, or in any manner ques-
tioning her right to the property as her separate property, is admissible
in an action brought by the purchaser from her to recover from the hus-
band the property conveyed by her; and so also is evidence that prior to

the conveyance by her the husband had disclaimed any interest in the property.

PRESUMPTION THAT ALL PROPERTY PURCHASED BY WIFE during the existence of the marriage, for a moneyed consideration, is common property, is not applicable to all cases, but the legal presumption as to ownership varies with the different facts and circumstances surrounding each case.

APPEAL from the district court of the first judicial district, Pima county. The facts are stated in the opinion.

*Titus & Hughes*, for the appellant.

This is an action of ejectment in which the plaintiff was nonsuited.

1. The court erred on the trial of this cause in excluding oral description of the premises in controversy, and in nonsuiting the plaintiff, because the premises referred to in the evidence were not identified as the same described in the complaint. 2 Greenl. Ev., sec. 308; *Jackson* v. *Vosburgh*, 7 Johns. 186; *McGarvey* v. *Little*, 15 Cal. 27; *Castro* v. *Gill*, 5 Id. 40; *Doll* v. *Feller*, 16 Id. 432.

2. The court erred on the trial of this cause in excluding the deed of Anna C. Woffenden to the plaintiff for the premises in controversy, dated February 11, 1874, because the same was acknowledged before a justice of the peace, and not on examination separate and apart from the husband of the maker, who was a married woman. Comp. Laws, 310, sec. 1; Id. 305, sec. 1; Id. 360, sec. 4; *Miller* v. *Fisher*, Sup. Ct. A. T., January term, 1875, *ante*, p. 232; *Elliott* v. *Osborne*, 1 Cal. 396; *Blood* v. *Humphrey*, 17 Barb. 660; Abbott's N. Y. Digest, title Acknowledgment of Deeds.

3. The acknowledgment of Anna C. Woffenden, dated November 2, 1875, on her deed made February 11, 1874, if valid in other respects, related back to the making of the deed, and constituted the same competent evidence without further sanction or proof against all but *bona fide* purchasers without notice; and the court erred in ruling otherwise on the trial of this case. *Johnson and Wife* v. *Stagg*, 2 Johns. 510; *Jackson* v. *Bard*, 4 Id. 230; S. C., 4 Am. Dec. 267; *Heath* v. *Ross*, 12 Id. 140; *Stark* v. *Barrett*, 15 Cal. 361.

4. The court erred on the trial of this case in excluding evidence in answer to the following question: "To

whom was the sale of the ranches in controversy communicated when the same was being made?" which evidence was offered to show that at the time Mrs. Woffenden was negotiating with her nephew, the plaintiff, for the sale of the ranches in controversy, it was made known to the defendant by her, in the presence of the said plaintiff, and the defendant then denied neither her ownership nor the power to sell, but remained entirely silent, and allowed the sale to be consummated and the consideration to be paid without objection. This evidence, it is submitted, was offered to show estoppel. *Snodgrass* v. *Ricketts*, 13 Cal. 359; *Eply* v. *Witherow*, 7 Watts, 163; *Wendell* v. *Rensselaer*, 1 Johns. Cas. 353; Story's Eq. Jur., secs. 1538, 1542; *Demyer* v. *Souzer*, 6 Wend. 436; *L'Amoreux* v. *Vischer*, 2 Comst. 278; *Watson's Ex'rs* v. *McLaren*, 19 Wend. 562; *Weaver* v. *McKorkle*, 14 Serg. & R. 304; *McMullen* v. *Wenner*, 16 Id. 18; S. C., 16 Am. Dec. 543; Comp. Laws, 337, sec. 10.

5. The court erred on the trial of this case in excluding evidence that the plaintiff was in the adverse, prior, and notorious possession of the lands in controversy; that the defendant never questioned such possession, but disavowed any interest of his own in the property in controversy, and declared his determination never to return to it. *Morton* v. *Folger*, 15 Cal. 275; *Slaughter* v. *Fowler*, 44 Id. 195; *Page* v. *O'Brien*, 36 Id. 559; *Potter* v. *Knowles*, 5 Id. 88; *Nagle* v. *Macy*, 9 Id. 426; *Hicks* v. *Davis*, 4 Id. 67.

6. The court erred on the trial of this case by excluding evidence that the defendant had abandoned the premises in controversy by leaving the same with an intention never to return to them: folios 54, 55, 57, transcript. *Judson* v. *Malloy*, 40 Cal. 229; *Bell* v. *Bed Rock T. & M. Co.*, 36 Id. 214; *Smith* v. *Cushing*, 41 Id. 97; *Sweeney* v. *Reilly*, 42 Id. 402; *Moon* v. *Rollins*, 36 Id. 333; *Davis* v. *Butler*, 6 Id. 510; *French* v. *Braintree Man. Co.*, 23 Pick. 216; *McGoon* v. *Aukeny*, 11 Ill. 558.

7. In the territory of Arizona, since the act of 1871, relating to married women of the age of twenty-one years and upward, all property owned by them before marriage, as well as that acquired afterward, together with the fruits of the same, is separate property, and there is here, therefore,

no such presumption as that any portion of such property or its fruits is common property, nor that the husband is entitled to the control or disposition of the same. Nor are such women, or those who claim through or under them, bound to furnish greater or other evidence of title or ownership than any other parties litigant; and the court erred in ruling otherwise in the present case. Comp. Laws, 310, sec. 1; Id. 305, sec. 1; *Miller* v. *Fisher*, Sup. Ct. of A. T., January term, 1875, *ante*, p. 232; *Earl* v. *Grim*, 1 Johns. Ch. 494; *Philipps* v. *Chamberlaine*, 4 Ves. 51; *Fox* v. *Phelps*, 17 Wend. 393; *Countess of Shrewsbury* v. *Earl of Shrewsbury*, 1 Ves. 227; *Ladd* v. *Ladd*, 17 Curt. Cond. Rep. 479; 2 Story's Eq. Jur., secs. 1020, 1369; *Selover* v. *American R. C. Co.*, 7 Cal. 266; *Magee* v. *Scott*, 9 Cush. 150; *Lewis* v. *Johns*, 24 Cal. 98; 1 Greenl. Ev., sec. 74; Comp. Laws, 360, sec. 1.

8. The court erred on the trial of this case in receiving without objection the deeds patent of the United States to Robledo, Moreno, and Duran for the ranches in controversy, the deed from Robledo to Anna C. Woffenden for the Robledo and Duran ranches, and the deed from Moreno to Anna C. Woffenden for the Moreno ranch, which were offered in evidence to show title in Anna C. Woffenden and her power to convey the same to the plaintiff in the present case, and in assigning to the said deeds the effect by operation in law of showing title in the defendant. Comp. Laws, 360, sec. 1.

9. The court erred on the trial of this cause in excluding evidence of the quantity and value of the crops on the ranches in controversy July 2, 1875, when the defendant took possession of them, on the ground that the documentary evidence above referred to showed the title to be in the said defendant.

*Farley & Pomroy*, for the respondent.

1. There should be a certificate of the judge or attorneys to the statement that it has been allowed and is correct, or that it has been agreed upon and is correct. Comp. Laws, 437, sec. 343.

2. The statement should have been filed within twenty days after rendition of judgment. *Macomber* v. *Chamber-*

*lain,* 8 Cal. 322; *Harper* v. *Minor,* 27 Id. 115; *Ryan* v. *Dougherty,* 30 Id. 221.

By Court, TWEED, J.:

This action was ejectment for three quarter-sections of land being in Pinal county, and contiguous to other lands described in the complaint by their legal subdivision, and as being generally known as the Robledo, Moreno, and Duran ranches.

In his complaint the plaintiff alleges that he was seised in fee of the premises on the eleventh day of February, 1874, and while so seised, to wit, on the fifth day of July, 1875, he was ousted by the defendant.

The answer denies that the plaintiff was ever seised of the premises, or was ever entitled to the possession of the same or any part thereof; denies that the defendant entered into the possession of the premises while the plaintiff was *so seised* as alleged in the complaint; and denies that he unlawfully withheld, or at any other time has withheld, the possession of the premises from the plaintiff; alleges seisin in himself of one quarter-section of the lands on the first of October, 1873, by virtue of a deed of bargain and sale, for the consideration of five hundred dollars, from Abram Moreno and his wife, Mariana Moreno, to Anna C. Woffenden, the wife of the defendant, bearing the date above mentioned; and alleges seisin of the other two quarter-sections on the tenth day of December, 1873, by deed of bargain and sale of that date, for the consideration of twenty-one hundred dollars, from Ygnacio Robledo and Romula Robledo, his wife, to the said wife of the defendant; alleges that the said Anna C. Woffenden was on the first of October, 1873, and on the tenth day of December, 1873, and still was at the date of the answer, the wife of the defendant.

On the trial the plaintiff offered in evidence a deed for the premises from Ana C. Woffenden to the plaintiff, made February 11, 1875, for the consideration of five thousand dollars. Defendant's counsel objected to the admission of the deed on three grounds: 1. That the acknowledgment was defective, having been taken before a justice of the peace, not a proper officer; 2. That it did not contain the declaration required by the statute as to the person sign-

ing the same having been examined separate and apart from and without the hearing of her husband, etc.; 3. That it had not been shown that Anna C. Woffenden had power to convey the premises; that it had been admitted in open court, by plaintiff's counsel, that from August, 1872, the said Anna C. Woffenden had been and then was the wife of the defendant; and that no showing had been made or offered that the premises were her separate property. Those objections were collectively sustained by the court, and the plaintiff excepted to the ruling.

Assuming, for the present, that the premises in controversy were the separate property of the grantor, and passing for the present, also, the question whether any acknowledgment on the part of the grantor of the deed was necessary to entitle it to be received in evidence in the case between the parties, was the acknowledgment defective in having been taken before a justice of the peace? or in that it was not made upon an examination separate and apart from and without the hearing of her husband?

In *Miller* v. *Fisher, ante,* p. 232, decided at the last term of this court on a hearing had before a full bench, it was held, without dissent on the part of either member of the court, that under the act of 1871 it was not necessary that a contract by a married woman of the age of twenty-one years and upwards, as to her separate property, should be evidenced by a writing signed by her, and acknowledged by her upon an examination separate and apart from her husband, etc.

We are now asked to reconsider the ruling, and adopt the theory that the act of 1871 operated to change the law in this regard to this extent only, that the wife may convey without being *joined* with the husband in the conveyance, but must still acknowledge the execution of the instrument separate and apart, etc., as required by the act of 1865.

One year has passed since the decision in *Miller* v. *Fisher* was made and published, and important rights have doubtless grown up and vested under the construction which we then gave to the statutes in question. In such a case, the reasons for overruling a former decision should be very clear and conclusive; besides this, unless it very clearly appears that the former ruling was erroneous, the court may properly

consider whether the construction given to the statute by its former decision on the ruling it is now urged to make is most beneficial to the parties whose rights are to be controverted thereby.

Conceding, then, for the present, that there may be reasonable doubts as to the former ruling, does the construction thus given to the statute deprive the wife of any substantial rights, or in any manner make such rights less secure? Does it deprive her of any safeguard in the control or disposition of her separate property, or make less simple and safe the rules for its disposal? In other words, is or was the provision in our statutes requiring this acknowledgment of a contract or conveyance by the wife on an examination separate and apart from her husband, etc., of any practical use whatever? Of course there can be no doubt that under the act of 1871 the wife may convey her separate property by her deed, without being joined by her husband. This she may do without any consultation with or consent from him. To what end, then, having executed a deed for her separate property, should she be required to go before a notary or other officer and make this acknowledgment upon an examination separate and apart from her husband, etc.? If she desires to convey her property, she may do so without his knowledge. If the husband has coerced or overpersuaded her into the execution of the conveyance, and she has been submissive to his will, is she likely to assert her own wishes and make the acknowledgment when in the presence of a notary? If this safeguard, so called, for the wife's interest was ever, under any law for the conveyance of her separate property, of any practical value, which we very much doubt, there can be no doubt that under a law allowing the wife to convey without being joined with her husband, and without his consent or even knowledge, such a provision is a vain thing—a needless, useless requirement, productive of no possible beneficent result.

But the statute, in the Howell code of conveyance, Compiled Laws, 362, 363, section 22, which it is insisted should be taken in connection with the act of 1865, provides, "that upon this examination, separate and apart from the husband, etc., the wife shall be made acquainted with the contents of the conveyance," etc., and it was gravely and earnestly urged

by counsel for respondent that this was an important safeguard to the wife, the presumption of law being that the wife would not know the character of the instrument until so informed by the officer taking the acknowledgment; and it is not without some regret that we admit that there were American authorities cited sustaining the counsel in his position. What is the basis of such a presumption? It must be found, if anywhere, in the supposed ignorance or stupidity of the wife. Before her marriage, if of the age of twenty-one years, and after her husband's death, the law presumes her competent to buy and sell and convey property, and supposes she acts in such matters as intelligently as if she were of the opposite sex; but during the existence of the marriage relation somehow this condition of ignorance and stupidity is supposed to settle down upon her, to benumb her faculties, to cast a cloud upon her intelligence, to be lifted only by the death of her spouse or other severance of the marriage bond.

We are quite sure that the presumption contended for by the counsel for the respondent, that a woman of mature years, and an American wife, ceases from the day of her marriage to know what she is doing in the execution of a conveyance until advised of the contents of the instrument by a notary or other officer, obtains nowhere else than in a court of justice, and should no longer obtain there; and we are equally certain that the legislature of Arizona in enacting the law of 1871, which gives to the wife the sole and exclusive control of her separate property, enabling her to convey the same without being joined by her husband, "as fully and perfectly as if unmarried," did not intend that any such presumption of the wife's ignorance or stupidity should obtain thereafter.

Again, as to the utility of the provision for this acknowledgment of the wife upon an examination separate and apart, etc. It is somewhat remarkable, considering the learning and research which have been bestowed upon the matter, that not a case has been reported, so far as we can discover, wherein it appears that this safeguard, so called, even in a single instance, operated to protect the interest of the wife, or save her from coercion or imposition. We do not remember the citation of such a case, nor have we in our

own experience, nor in our association with the legal pro-
fession, known or heard of any case where this provision
ever operated as a safeguard to the wife in any respect
whatever. Again, while we deem the provision referred to,
to be valueless to the wife as a safeguard against the coer-
cion of the husband and impositions from others, the pro-
vision is not simply harmless, but has been the occasion of
frequent fraud and wrong; for it has often happened that
when a wife has joined her husband in a conveyance under
laws requiring her to do so, and her acknowledgment has
been made to the officer separate and apart as fully and com-
pletely in all respects as required by law, and the officer
purposely and ignorantly has failed to write the certificate
of acknowledgment in the exact form required, the wife,
being controlled by the husband, has refused to aid in the
correction of the error, and the purchaser is left without a
remedy.

It is very safe to say that greater frauds and more in-
justice have resulted from the requirement of this form of
acknowledgment on the part of the wife than would be likely
to obtain when the wife's acknowledgment may be taken
as in other cases.

Again, the provision if valueless to the wife is not harm-
less; it treats the wife as an inferior person, especially liable
to coercion and imposition, and as being incapable of caring
for and guarding her own interests as other sane persons
are capable of doing.

If our statutes of 1864 and 1865, which counsel for re-
spondent insists are still in force, are so, and not repealed
by the act of 1871, the woman who married yesterday and
was possessed of a fortune acquired by her own learning,
labor, or skill, can not to-day make a valid sale of a dilapi-
dated sewing-machine without putting the contract in writ-
ing, and going before a justice of the supreme court or other
officer and acknowledging, upon an examination separate
and apart from her husband, *upon being made acquainted with
the contents of the instrument* (which she may have written
herself), that she executed the same freely and voluntarily,
etc.

We will now examine the several acts of our legislature
bearing upon the question under consideration, and in the

light of these enactments revise the decision in the case of *Miller* v. *Fisher;* for if that decision was erroneous, if it clearly appears that the law was not what it was declared to be in that case, the construction we then gave to the statute must be overruled, however beneficial that construction may appear to be to those whose rights and interests are involved in the question.

Section 1, chapter 32, of the rights of married women, Howell's code, reads as follows: "The real and personal estate of every female acquired before marriage, and all property, real and personal, to which she may afterwards become entitled by gift, grant, inheritance, devise, or in any other manner, shall be and remain the estate and property of such female, and shall not be liable for the debts, obligations, or engagements of her husband, and may be contracted, sold, transferred, mortgaged, conveyed, devised, or bequeathed by her in the same manner and with like effect as if she were unmarried."

Section 2 of chapter 42, Howell's code of conveyances, reads as follows: "A husband and wife may by their joint deed convey the real estate of the wife in like manner as she might do by her separate deed if she were unmarried."

Section 19, same chapter, reads as follows: "A married woman may convey any of her real estate by any conveyance thereof executed and acknowledged by herself and her husband, and certified in the manner hereinafter provided, by the proper officer taking the acknowledgment."

Section 21, same chapter, reads as follows: "Any officer authorized by this chapter to take the proof or acknowledgment of any conveyance whereby any real estate is conveyed, or may be affected, may take and certify the acknowledgment of a married woman to any such conveyance of real estate."

Section 22, same chapter, reads as follows: "No such acknowledgment shall be taken unless such married woman shall be personally known to the officer taking the same to be the person whose name is subscribed to such conveyance as a party thereto, or shall be proved to be such by a credible witness; nor unless such married woman shall be made acquainted with the contents of such conveyance, and shall acknowledge, on an examination apart from and with-

out the hearing of her husband, that she executed the same
freely and voluntarily, without fear or compulsion or undue
influence of her husband, and that she does not wish to
retract the execution of the same."

The next section prescribes merely the form of the cer-
tificate of acknowledgment, and need not be quoted. The
same chapter designates the officers who may take acknowl-
edgments of deeds in the territory, among whom are
notaries public and justices of the peace of the proper
county.

In the case of *Miller* v. *Fisher*, the court overlooked the
provisions in the statutes of conveyances contained in the
Howell code and quoted above; and regarding the first sec-
tion, "of the rights of married women," Howell's code,
as controlling upon the questions as to what the law was
upon the subject in 1864, held that it was the intention of
the legislature by the act of 1871 to reinstate married women
of the age of twenty-one years and upwards as to their
rights to their separate property to the same status in which
they stood, as was supposed by the court, under the pro-
visions referred to in the act of 1864, "of the rights of
married women."

An attempt was made by the counsel for the respondent
to reconcile this section with the several sections of the
chapter on conveyances above quoted, but to us the provis-
ions of those two chapters seem irreconcilable. The first
section quoted authorizes the wife "to contract, sell, trans-
fer, mortgage, convey, devise, or bequeath her separate
property *in the same manner and with the like effect as if she
were unmarried.*"

Her conveyance as soon as made would become effectual.
The delivering of the deed by her would divest her of all
interest in the property without any acknowledgment what-
ever. Whereas, under the section referred to in the chap-
ter on conveyances of the year 1864, the wife's deed of her
separate property would be a nullity until acknowledged as
in that statute provided.

Standing alone, and uncontrolled by other provisions,
there can be no doubt that under the first section of the act
of 1864 a married woman, without being joined by her hus-
band, could convey her separate property in the same man-

ner and without other observances as to forms or acknowl-
edgment than would be required if she were unmarried,
and it was so considered by the court in deciding the case
of *Miller* v. *Fisher,* for, as has been already stated, in passing
upon that case, the court only looked to this section as con-
trolling the law upon this subject under the original Howell
code, overlooking the provisions touching the matter in the
chapter on conveyances. But giving effect to the provisions
in the last-named chapter, the husband must join in the con-
veyance, and the manner and form of the conveyance is
clogged by the condition of the wife's acknowledgment sepa-
rate and apart before the deed can become effectual for any
purpose whatever.

The Howell code was prepared in great haste immediately
after the organization of the territory, and acted upon at
the first session of our legislature, and there was little time
for careful consideration of the provisions of the statutes of
other states which were incorporated into the code, and it
is not derogating from the just praise to which its author
and the legislature are fairly entitled to say there was much
that was incongruous and unsystematized in its provisions.

We have quoted the statutes bearing upon the subject of
the wife's acknowledgment as they stood at the adjourn-
ment of the session of the legislature of 1864. In 1865 an
act was passed, the first section of which reads as follows:
"All property, both real and personal, of the wife, owned by
her before marriage, and that acquired afterwards by gift,
bequest, devise, or descent, shall be her separate prop-
erty; and all property, both real and personal, owned by the
husband before marriage, and that acquired by him after-
wards by gift, bequest, devise, or descent, shall be his sepa-
rate property."

The second section of the same act provides, "that all
property acquired after marriage by either husband or wife,
except such as may be acquired by gift, bequest, devise, or
descent, shall be common property."

The third, fourth, and fifth sections of the same act pro-
vide for inventory and registration of the separate prop-
erty of the wife; and the sixth section, from the operation
of which, in *Miller* v. *Fisher,* we held married women of the
age of twenty-one years and upwards exempt as to this

acknowledgment by force of this act of 1871, reads as follows: "The husband shall have the management and control of the separate property of the wife during the continuance of the marriage, but no sale or alienation of any part of such property can be made, nor any lien or incumbrance created thereon, unless by an instrument in writing signed by the husband and wife, and acknowledged by her upon an examination, separate and apart from her husband, before a justice of the supreme court, probate judge, or notary public, or if executed out of the territory, then acknowledged before some judge of a court of record, or before a commissioner appointed under the authority of this territory to take acknowledgment of deeds."

It will be observed that this section does not provide that the wife shall be "made acquainted with the contents of the instrument" she is executing, nor that she shall acknowledge upon an examination, separate and apart, that she executed the same "freely and voluntarily, without fear or compulsion or undue influence of her husband, and that she does not wish to retract the execution of the same," as provided in the act of 1864, on conveyances; but the observance of these requirements of the last-mentioned act was probably contemplated by section 6 of the act of 1865, now under consideration.

We have set out the several enactments bearing upon the question we are considering up to the time of the passage of the act of 1871. That act is in these words:

"Section 1. Married women of the age of twenty-one years and upward shall have the sole and exclusive control of their separate property, and may convey and transfer lands or any estate or interest therein, *vested in* or held by them in their own right, and without being joined by the husband in conveyance, as fully and perfectly as they might do if unmarried.

"Section 2. All acts and parts of acts, so far as they conflict with the provisions of this act, are hereby repealed."

It was under this act, with its repealing clause, that this court held, in the case of *Miller* v. *Fisher*, the provisions of the sixth section of the act of 1865, and all former provisions upon the subject under consideration, inoperative as to married women of the age of twenty-one years and upwards.

It is true that in that case the question before the court was as to the right of a married woman to make a conveyance of her separate personal property without a writing so acknowledged, etc. But the section referred to in the act of 1865 includes "all the separate property of the wife," and provides that no sale or other alienation of *any part of such property* shall be made, except by such writing so acknowledged, etc. Upon the argument in that case, and we think in the brief of the counsel for the respondent therein, the attention of the court was called to some of the leading authorities cited by the counsel for the respondent in this, and the same positions insisted upon which are now urged, that the act of 1871 only operated to repeal the provisions of section 6 of the act of 1865, so far as it required that the wife should be joined by her husband in the conveyance, etc., and yet the court were unanimously of the opinion that the provisions in that section touching the acknowledgment of married women of the age of twenty-one years and upward were swept away by the act of 1871.

And as the court then held, the majority of the court now hold, that by the act of 1871 the legislature, in providing that a married woman's separate property should no longer be left to the management of her husband, but should be under her own sole and exclusive control, and that she might convey and transfer the same as fully and perfectly as if unmarried, intended in all respects to place the wife of the age of twenty-one years in precisely the same attitude, as to the conveyance of her property, as if she were a *feme sole;* that she should no longer be hampered with conditions and provisions in the transfer and conveyance of her separate property which are not imposed upon unmarried women.

Among all the rules for the construction of statutes, so liberally quoted by the respondent's counsel, no one is more likely to lead to a true interpretation of the intention of the legislature in an enactment than that of giving to its language and scope the meaning it would convey to the common mind.

It was upon such a reading of this act of 1871 that this court held that the acknowledgment separate and apart, etc., by the wife as to her separate property, was no longer necessary to her conveyance thereof. The act was certainly

calculated to mislead those acting under it, if it is to be construed as requiring any other act, or the observance of any other formula, on the part of a married woman than is required of an unmarried one.

We think it clear that the legislature intended by the act just what any person of ordinary intelligence would understand by it, and would receive and adopt as its obvious meaning; and we have no doubt that the common understanding of intelligent persons as to the meaning of the act would be in precise accordance with the construction we gave to it in *Miller* v. *Fisher.*

Again, had the act been intended in this regard only to relieve married women from being joined in a conveyance of their separate property by their husbands, and not to extend further, it seems to us the legislature would have used other terms than those with which the section concludes, and would have said " as fully and perfectly as if so joined,", rather than the terms, " as fully and perfectly as they might do if unmarried." Certainly such a wording of the statute would make the construction given to it by the counsel for the respondent much more plausible than the terms therein used, but the counsel for the respondent insists that the requirement as to the acknowledgment contained in section 6 of the act of 1865 does not operate as a hindrance or obstruction to the perfect freedom of the wife in conveying her property; that the requirement has to do with the *mode* only, and that not in such a way as to prevent her from conveying as fully and perfectly as if unmarried.

Is this so? Unnecessary machinery impedes and is an obstruction in the prosecution of any work, and every useless formula, the observance of which is required in the transaction of affairs, is a limitation upon the freedom exercised in the performance of the act, and that the requirements of this section of this acknowledgment does not leave the wife to convey as fully and perfectly as if she were unmarried, seems to us very clear.

In fact the wife can not convey perfectly where such an acknowledgment is required; without the certificate of the officer, she can not convey at all. "No sale or other alienation of any part of such property can be made," etc., without this writing and acknowledgment, is the language

of the act of 1865. That of 1871 is, that she may convey as fully and perfectly as if unmarried. To illustrate: Jane, a married woman, and Sarah, unmarried, each own a lot in Tucson; they both sell to a purchaser, who waits upon them while they write the deed; each writes the deed for the lot she intends to convey; each signs and seals her deed, and in the same manner; and each delivers her deed to the purchaser, and demands the contract price for the property. The purchaser hands the price of the property to Sarah, but says to Jane, This is not your deed, nor can it become so until you go before a notary or other officer, get him to inform you of the contents of the deed you have just written, make an acknowledgment on an examination separate and apart from your husband, etc., and then if the certificate of the officer is in proper form your conveyance will be complete, and you will be entitled to the purchase money.

Each has executed and delivered her deed in the same manner, and the act of 1871 provides that the married woman may by herself, without being joined by her husband, convey as fully and perfectly as if unmarried; and yet, while the deed from Sarah has passed the title to the purchaser, that from Jane is wholly without effect until she and an officer have done something not necessary to be done to give effect to Sarah's deed.

Again, the bad uses to which the cumbersome machinery of this requirement is put could hardly be more apparent than in the case before us, where the husband seeks to defeat the wife's deed—a deed which it is very clear he would never have moved her to make, and one made wholly against his wishes—by setting up that she has not, by any acknowledgment made upon an examination separate and apart from himself, shown that he himself has not coerced or even persuaded her to execute it.

We conclude this branch of the case by adhering to the ruling made in *Miller* v. *Fisher*, believing the act of 1871 is and was intended by the legislature to be a complete enfranchisement of the wife in the control or conveyance of her separate property from every badge of infirmity or serfdom, and relieving her from all humiliating conditions in regard thereto not imposed upon other persons.

This acknowledgment, then, separate and apart, etc., not being regarded in the conveyance of the separate property of the wife, it follows that no acknowledgment of the deed was necessary to entitle it to be received in evidence in this case (the defendant not being a purchaser), if it sufficiently appeared that the property intended to be conveyed was the separate property of Anna C. Woffenden.

What constitutes, then, the separate property of the wife under the act of 1871, taking into consideration the act of 1865?

The act of 1865, already quoted, so far as it affects this question, provides, that "all property, real and personal, of the wife owned by her before marriage, and that acquired afterwards by gift, bequest, devise, or descent, shall be her separate property."

The same act provides that the husband shall have the management of the wife's separate property, and that the rents and profits of the separate estate of either husband or wife shall be common property, and that the husband shall have the entire management and control of the common property, with absolute power to dispose of the same, as of his own separate estate.

The act of 1871 gives the sole and exclusive control of her separate estate to her if she be of the age of twenty-one years, with the right of disposing of the same free from any influence of and without the consent of her husband. This sole and exclusive right of control by the wife of her separate property is wholly inconsistent with the rights of the husband to the rents and profits. Of what value to the wife would be the right to control and convey if upon the lease or conveyance the rent on one hand and the purchase money upon the other became at once community funds under the absolute control of the husband?

By the fourteenth section of article 11 of the constitution of California it is provided, that "all property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterwards by gift, devise, or descent, shall be her separate property."

By an act of the legislature of that state, regulating the relation of husband and wife, it was enacted: "The husband shall have the entire management and control of all the com-

mon property with the like absolute powers of disposition
as of his own separate estate, and the rents and profits of the
separate estate of either husband or wife shall be deemed
common property," etc.

Upon a question as to the constitutionality of this enact-
ment, raised in the case of *George* v. *Ransom,* 15 Cal. 322,
the court uses the following language: " We think the legis-
lature has not the constitutional power to say that the fruits
of the property of the wife shall be taken from her and
given to the husband or his creditors. If the constitutional
provision be not a protection to the wife against the exer-
cise of this authority, the anomaly would seem to exist of
the right of the property in one, divested of all beneficial
use—the barren right to hold in the wife, and the beneficial
right to enjoy in the husband. One object of the provision
was to protect the wife against the improvidence of the hus-
band; but this object would wholly fail in many instances
if the estate of the wife were reduced to a mere reversionary
interest, to be of no avail to her except in a contingency of
her surviving her husband."

The court further says: "The common law recognized no
such solecism as a right in the wife to the estate, and a
right in some one else to use it as he pleased, and to enjoy
all the advantages of its use. It is not perceived that prop-
erty can be in one, in full and separate ownership, with a
right in another to control it and enjoy all of its benefits.
The sole value of property is in its use; to dissociate the right
of property from the use in this class of cases would be to
preserve the name, the mere shadow, and destroy the thing
itself, the substance. It would be to make the wife the
trustee for the husband, holding the legal title while he held
the fruits of that title. This could no more be done, in con-
sistency with our ideas of property, during the life-time of
the wife than for all time."

The act of 1865, as has been seen, which prescribes what
property shall be the separate property of the wife, contains
also the antagonistic provision that the husband shall have
the management thereof, and of the rents and profits of the
same. The act of 1871 repeals these antagonistic provisions
by giving to the wife the sole and exclusive control of her
separate property, which carries with it the right to use and

invest the fruits thereof. Under the law of 1865, whatever of fortune belonged to the wife at her marriage or came to her in any manner afterwards, either as the fruits of her separate property or otherwise, was taken wholly from her use and control and given to the sole management of the husband; she might have been possessed, before her marriage, of ample means to supply her wants and gratify her tastes free from the control of any one, but on the day of her marriage and by the act of marriage, she is divested of the right to use one dollar's worth of this property *as her own*. It makes no difference what the kind and character of the property may be. If she had a carriage, it is no longer her own; she may not even use it except by leave of her husband; if she have money, the husband may demand and take possession of it, doling it out to her, if at all, in such pittances as to make her keenly sensible of her condition of serfdom. This was the law of 1865, and these the conditions to which every woman in Arizona had to submit in contracting marriage under it.

We are advised by recent decisions of the United States courts of the effect of the decree of confiscation of the property of those recently in rebellion against the government, and understand the effect of such a decree of confiscation to be wholly to deprive the offender of all right to use and control or in any manner interfere with the property confiscated in his life-time, though at his death it may pass to his heirs.

Under the act of 1865, as it stood before the enactment of 1871, the wife, possessed of a fortune on the day of her marriage, by entering into this relation lost as wholly and completely all right to the use and enjoyment of her separate property as if the same had been confiscated for rebellion against the government. The decree of confiscation in the one case, and bride's marriage certificate in the other, would operate alike, and take from rebel and matron with admirable completeness and impartiality all right to use, appropriate, and enjoy the least even of the treasures owned and held by them when either entered into matrimony on the one hand, or committed an act of rebellion on the other. It seems to us the penalty, so to speak, imposed by the law of

1865 upon women for entering into the marriage relation was unnecessarily severe.

It was to get rid of these obnoxious provisions that the act of 1871 was passed. The law as it stood before that act was passed, instead of fostering and encouraging marriages, was framed as if for the very purpose of preventing women possessed of property from entering upon this relation; the more enlightened legislation of 1871 says to every woman contracting marriage in our territory, You shall have the sole and exclusive use and control of your separate property, and may bestow, convey, and transfer the same when and how you will, as fully and perfectly as if unmarried.

We think the act of 1871 adds to the methods by which the wife may obtain separate property. That instead of being confined to several methods of gifts, bequest, devises, and descent, she may add to her separate property by purchase, that she may use the rents and profits of her separate property by investing them in the purchase of other property, lands, or personal property, and that such property when so purchased is not *acquired* in the sense in which that word is used in the first section of the act of 1865.

We conclude, then, that the wife, of the age of twenty-one years, in addition to the property owned by her at her marriage, and in addition to that afterwards acquired by gift, bequest, devise, or descent, may acquire property, real or personal, by *purchase* if the purchase money be of the separate funds of the wife, and that the rents and profits of her separate property are her separate funds. In another case now before us we may consider this matter more fully.

The fact, then, that the property intended to be conveyed by the deed offered in evidence was granted to Anna C. Woffenden for a moneyed consideration is not conclusive that the property was common property, for if the moneyed consideration was of her own separate funds, had and owned by her before marriage, or received by way of rents and profits from her separate property after marriage, the property was her *separate property*, and under her sole and exclusive control.

We pass the question as to the presumption that all property conveyed to the wife for a moneyed consideration is common property, as necessarily involved in this case, if it

appears, as we think it does, from the transcript that evidence was offered and ruled out which would go strongly to support the theory that the property was the separate property of Anna C. Woffenden at the time of the conveyance by her to the plaintiff and appellant herein; for admitting the legal presumption to be as above stated, such presumption may be rebutted and overcome by proof that the property was purchased with the separate funds of the wife.

It is, however, insisted by counsel for the respondent that no evidence was offered by the plaintiff showing or tending to show that the property in controversy was the separate property of Anna C. Woffenden.

Passing the question as to the order in which this proof should have been offered, was such evidence offered at all?

On the examination of the witness Charauleau (see folio 43 of transcript), the witness was asked: "To whom was the sale o̶ ̶ ̶ ̶nches communicated when the same was being m̶ ̶ ̶

The s̶ ̶ ̶ ̶s on and reads: "The offer upon the question ̶ ̶ ̶ve that when the sale was made by Anna C. Wo̶ ̶ ̶he plaintiff of the ranches in contest, the defe̶ ̶ ̶informed of it by her in presence of the plai̶ ̶ ̶e did not then question Mrs. Woffenden' owners̶, ̶ ̶ ̶her right to dispose of the property in question, bu̶ ̶ ̶ed the contract to proceed, and the consideration of five thousand dollars to be paid, without any question or objection.

The court ruled that there was no deed in evidence, and inquired of the plaintiff's counsel what he meant by sale. Counsel answered " that he meant a contract for the conveyance of the property in controversy, to be consummated, as it afterwards was, by deed." We understand from the transcript, as above quoted, that upon putting the question to the witness, the plaintiff's counsel offered to prove by the witness the matters set out, in substance—that while negotiations were in progress between Mrs. Woffenden and Charauleau for the sale of the ranches the defendant was present, that she was treating the ranches as her separate property, and the defendant in no manner questioned her right so to do, but permitted the negotiation to go on and the plaintiff herein to pay the purchase money, etc.

As we understand from the transcript, the court not only sustained the objection made by the defendant's counsel to the question put as leading, but also ruled the evidence offered should be excluded; that is, the court would not permit the plaintiff to prove by the witness the matter he offered to prove, had there been no objection to the form of the question.

We have no doubt that in this the court erred; the offer was not by oral testimony to establish and prove a contract for the conveyance of lands, it was to show that the property being negotiated was the wife's separate property, as evidenced by the conduct of her husband while she was negotiating the sale thereof, and treating it as her own.

Giving full force to the legal presumption contended for by the counsel for the respondent, that the property was common property, it might still be shown to be the wife's separate property; for though obtained by grant for a moneyed consideration, if this moneyed ion was of her separate funds, the property wo eparate property.

Now, when she was so negotiating a sal perty, bargaining it for a price with the view ██g it, would not the fact that the husband was pre ade no objection to the negotiation, nor in any ██ questioned her right to the property as her separa perty, be evidence strongly tending to show that the property was her separate property and obtained by her separate funds? The title of the property vested in her by virtue of the deeds from her grantors if the purchase money was of her own funds; if not, then the property became common property. The evidence offered was to show that the defendant himself being present assented to her treating the property as her separate property, which it is assumed he would not have done had the property been purchased with his separate funds or with the common fund.

Again, the plaintiff offered to prove by the witness Wise (see transcript, folio 57), that the defendant in 1874 "disclaimed in the witness's presence any interest in the ranches in controversy, and expressed his determination never to return to them." The deed from Abram Moreno and Mariana Moreno, his wife, and from Ygnacio Robledo and

Romula Robledo, his wife, conveyed the title of the property to Anna C. Woffenden to vest in her as her separate property if purchased by her separate funds, otherwise to become common property. If it was common property, the defendant certainly had an interest in it. Was not his disclaimer of any interest in the property evidence tending to show that the property was the separate property of the wife? The husband has control of the common property, and if these lands had been purchased with means from the common fund, would he not have known it, and would he have disclaimed any interest in them?

Had the defendant paid for the property out of his own means, or out of the common funds, would he be likely to make such disclaimer? At any rate, such disclaimer was proper evidence to go to the jury as tending to show that the property was the separate property of the wife.

It would have been more regular for the plaintiff, when offering the deed from Anna C. Woffenden in evidence, to have offered in connection therewith the evidence above referred to. The deed and this evidence should then have gone to the jury, under instruction from the court to the effect that if the evidence satisfied them that the property was purchased by the separate funds of the wife, it was her separate property, and that the deed was sufficient to convey the same.

This evidence was a sufficient predicate for the introduction of the deed, and probably the deed would have been offered after this evidence was offered and ruled out, had not the court excluded the deed on the ground that the certificate of acknowledgment was defective. It is apparent that the court held that the deed, even with this evidence, could not properly be admitted to go to the jury. We think both should have been received under instructions as above indicated.

We have considered this case upon the hypothesis that it is the presumption of law that all property acquired by either spouse after marriage, otherwise than by gift, bequest, devise, or descent, is common property; but while we have so considered the matter in this case, we would not be understood as adopting the correctness of this presumption stated as broadly as it is in the authorities cited. The current of

the authorities cited, principally from California reports, is to the effect that *all* acquisitions by either spouse for a moneyed consideration, during the existence of the marriage, is presumptively common property. It seems to us that there are grave objections to the rule as stated in these authorities. A legal presumption should cer ainly accord with the probable fact. Common property, under our law, can only accumulate after marriage, and if either spouse who married yesterday to-day purchases and pays for property of the value of ten thousand dollars, could the presumption arise that the property is common property? Would it not, on the other hand, appear certain that the property so purchased was not common property, that it must have been paid for by the separate funds of one or the other? And under the authorities referred to, if so paid for by the separate funds of either spouse, it would become the separate property of such spouse.

It appears to us· that no presumption can arise like that referred to, applicable to all cases, as is assumed by the authorities referred to, but that the legal presumption as to ownership would vary with the different facts and circumstances surrounding each case.

It follows from the conclusions at which we have arrived, that the judgment of nonsuit herein must be set aside and the case remanded for a new trial, and it is so ordered.

PORTER, J., concurred.

DUNNE, C. J., delivered the following dissenting opinion:

I dissent from the judgment. At the close of this term there was a change in the organization of the court—a newly appointed member of the court was daily expected to arrive. It was not known how soon he would come, nor how soon the opinions of the court could be prepared and filed. It was deemed advisable by the majority of the court to enter the judgments in the last few cases heard, and allow the opinions to be filed afterwards. As I am the judge who is retired, I am obliged to write my opinion without having before me the opinion of the majority of the court. I cannot, therefore, say how far I dissent from the opinion of the court; and not knowing on what reason the majority of the court will ground their decision, I must, at the risk of being prolix, review all

the grounds of error assigned, and express my opinion on each one separately. I will first notice the preliminary objection made by respondent as to the lack of authentication of the statement.

Rule 12 of this court reads as follows: "Exceptions to the transcript, statement, the bond or undertaking on appeal, or to the notice of appeal, or to its service or proof of service, or any technical objection to the record affecting the rights of the appellant to be heard on the points of error assigned must be taken at the first term after the transcript is filed, and must be noted in writing, and filed at least one day before the argument, or they will not be regarded. In such case the objection must be presented to the court before the argument on the merits."

This case was set for argument for January ——. On that day court opened, but without calling any case or in any way considering this or any other case, adjourned of its own motion until January ——. On January —— court opened pursuant to adjournment and called this case for argument. Respondent, before proceeding to this argument on the merits, produced a preliminary objection to the transcript, noted in writing, filed the day before the argument, and showed proof of service of same on counsel for appellant the day before the argument. Counsel for appellant opposed the hearing of the motion, arguing that it ought to have been noted the day before the day set for the argument of the case and not the day before the actual argument; and the majority of the court refused to hear the preliminary objection of respondent, on the ground that it had not been noted in time, to which ruling I dissented. Believing, therefore, that the objection ought to have been heard, I will consider it. The objection was that the statement in the transcript was not properly authenticated, and should therefore not be regarded by the court.

The provisions concerning authentication of statements are settled by our statute, Comp. Laws, sec. 343, p. 437, as follows: "The statement, when settled by the judge, shall be signed by him, with the certificate that the same has been allowed and is correct. When the statement is agreed upon by the parties, they or their attorneys shall sign the same, with their certificate that it has been agreed upon by them and

is correct. In either case, when settled and agreed upon, it shall be filed with the clerk."

In this it appears that the signature alone of the judge or the attorneys is not sufficient, but there shall also be a certificate that the statement is allowed or "has been agreed upon by them and is correct."

The whole case in the appellate court often turns upon the facts set up in the statement. It is, in such instance, upon those facts that the whole action of the court is based. The statute explicitly provides that there shall be clear and express proof of the truth of the statement. The mere signature of the judge to the statement is not sufficient. He must formally certify that he has allowed the statement, and that it is correct. So the mere signature of the attorneys is not sufficient. There must also be a certificate stating that they have agreed to the statement, and that it is correct. In this case there is no such certificate, nor any attempt at any certificate whatever. At the foot of the statement appear the names of the attorneys: nothing more. They certify to nothing. If the statute said merely that the statement should be attested by the judge, the parties, or their attorneys, a mere signature would doubtless be sufficient; but where the statute expressly states that there shall be a certificate, and declares what that certificate shall state, I do not think that it is a reasonable compliance with the statute to omit the certificate altogether. I am of opinion, therefore, that a statement so presented is not entitled to the notice of this court, and that this appeal stands upon the judgment roll alone. In that no error appears, and the judgment should therefore be affirmed.

2. Accepting, however, for the purposes of this opinion, that the unauthenticated statement embodied is true, the following appears: This was an action in ejectment. Plaintiff alleged seisin in fee of the premises in controversy on the eleventh of February, 1874; that the defendant entered thereon July 5, 1875, while plaintiff was so seised, and withholds to plaintiff's damage, in the sum of ten thousand dollars; and that the value of the rents and profits during such withholding is two hundred and fifty dollars per month. Defendant denies that plaintiff was ever seised or entitled to the possession of said premises; denies damages, and

alleges that he is the legal owner of said premises, and in possession thereof, stating his title; that plaintiff claims title from defendant's wife by deed, she having no power to sell; that said deed was made to defraud the defendant, and that plaintiff knew thereof and prays cancellation of said deed.

It was established on the trial by plaintiff's evidence that Anna C. Woffenden, from whom plaintiff claimed to have purchased the lands sued for, was from August, 1872, ever since has been, and now is the wife of the defendant; that the title to these premises stood in her name; that this title consisted of patents from the United States to her grantors and deeds of purchase from them to her for a moneyed consideration, made during her coverture; and that the only documentary title plaintiff claimed was a conveyance from her alone to plaintiff, made during such coverture. The first error assigned is as to action, shown at folio 40 of transcript. Plaintiff opened his case by taking the stand himself, as the first witness in his own behalf.

The first relevant evidence offered was that plaintiff was asked "to describe the whole property bought by him of Anna C. Woffenden, lands and all." Objected to as inadmissible, because: 1. No foundation laid for oral description of lands purchased, no proof of purchase itself having been made; 2. Evidence offered incompetent to prove purchase; should be in writing; no foundation to prove contents of lost writing. Objection sustained. The ruling on this objection was immaterial, as will appear in the consideration of the fifth assignment of error.

The second assignment of error is as to action, at folio 42. Plaintiff offered in evidence deed to himself of premises from Anna C. Woffenden. Objected to: 1. Defective acknowledgment; 2. That it has not been shown that the person executing said deed had power to convey the premises described therein. Objection sustained.

Here was an objection to the order of proof. Merely proving a conveyance to plaintiff in ejectment is nothing unless plaintiff shows that the person conveying had power to convey the legal title. Otherwise the court might be delayed for days at any time, and the record uselessly incumbered by the introduction of irrelevant conveyances. The court has the right to protect itself against such a practice.

Therefore the order of testimony has been left to the discretion of the court. No abuse of this discretion is shown.

It is not shown that plaintiff offered any reason for not introducing the requisite preliminary evidence at that time, nor that he assured the court he would subsequently produce it. There was no error, therefore, in excluding the deed at that time, the ruling as to the acknowledgment being immaterial, the deed itself being properly excluded on other grounds. The third assignment of error is for action, commencing at folio 43½.

Plaintiff, testifying in his own behalf, being asked on direct examination, "To whom was the sale of the ranches communicated when the same was being made?" offered to show that defendant, the husband, knew of the sale being made by his wife, and said nothing. Objected to as: 1. Leading; 2. Inadmissible, no proof of negotiations; 3. Incompetent, as oral, to prove agreement of sale; 4. Immaterial, no power in wife to sell having been shown, and this being incompetent evidence to show such power. Sustained. The evidence was immaterial. Granting it proved all that was claimed—that it proved that the husband stood by and saw his wife agree to sell real estate of common property—the most it would show would be equitable title in plaintiff, not sufficient to recover upon in ejectment against the holder of the legal title in possession. If it was separate property of the wife which she might sell without her husband's consent, as she could do here if it were separate property, then his knowledge or assent was also immaterial. It must have been either common or separate; and therefore the evidence was immaterial in either case, and was properly excluded.

The fourth assignment of error was in action, declared at folio 47½. "Plaintiff's counsel again offered in evidence the deed of Anna C. Woffenden to the plaintiff for the property in controversy, with an acknowledgment of that date, November 2, 1875." The action was begun September 6, 1875. An acknowledgment taken after commencement of the action, taken on the trial of the cause, is immaterial to show title in plaintiff at the commencement of the action. None of the other objections sustained to the deed on its first offer had been cured in the mean time. The only additional reason shown for the introduction of the deed was this sub-

sequent acknowledgment, and that was of no benefit to plaintiff in this action.

Before any other action was had which is assigned as error, the plaintiff introduced without objection patents from the United States for the premises in controversy to the grantors of defendant's wife, and deeds of purchase from them for a moneyed consideration to defendant's wife during her coverture. Plaintiff stated the object of this introduction to be as follows: " These deeds were offered in evidence to show that Mrs. Woffenden, at the date of the deed to plaintiff, was the absolute owner of the premises in controversy, and also to show her power to convey to the plaintiff." Folio 52.

The granting clauses in said conveyance to the wife are to her and her heirs and assigns. There is no *habendum* clause in either of them. In neither of them is there anything said at all in any way as to her having or receiving the premises, or any part thereof, as separate property.

The next and fifth assignment of error is as follows: " In excluding evidence that the plaintiff in this case was in the adverse, prior, and notorious possession of the real property in controversy; that the defendant never questioned the plaintiff's right of possession, but disavowed any interest of his own in said property, and declared his intention never to return it."

This evidence was offered after the admission of the documentary title last before described, showing title in the wife of the defendant from the United States by deeds of purchase during coverture, and which, the transcript says, though received, were not admitted by the court as proving power in the wife to convey to the plaintiff. To this offer, now made, to prove that plaintiff was in adverse, prior, and notorious possession of the premises, defendant objected: 1. That the evidence is inadmissible because title by adverse possession must be specifically pleaded, and must have continued five years in order to give the possessor title against the party holding the legal title, it appearing that the legal title is in the defendant; 2. That the offer does not claim to cover the period of five years, and is, therefore, incompetent to prove title by adverse possession; 3. That under the evidence already admitted in this case, title by adverse possession can not be shown, since plaintiff has already

shown, by the documentary evidence of title before alluded to, that the legal title is in the defendant from the United States government, than which no title can be prior. Objection sustained.

To that portion of the offer proposing to prove abandonment by acts and declarations of defendant, defendant objected, that the testimony offered was incompetent to prove title in the plaintiff or to prove abandonment by defendant, it having been shown that the legal title was in defendant by patent from the United States. Objection sustained.

The answer to all these points in the fifth assignment of error, as also to the first assignment, is, that the plaintiff himself proved that the legal title was in the defendant, under patents from the United States issued about eighteen months prior to the commencement of the suit. That such was the legal effect of plaintiff's proof, I will now discuss. But that such being the legal effect of plaintiff's proof it could be material to permit plaintiff to describe the lands, or to contradict his own testimony by attempting to prove prior or adverse possession to sustain an action in ejectment against such a defendant with such title, I will not discuss.

Plaintiff proved patents from the United States, for the premises in controversy, to the grantors of defendant's wife, and conveyances from them to her for a moneyed consideration, during her coverture. What is the legal effect of such a proof? Did the property become the separate property of the wife by such conveyances? or does the law presume it to be the common property of both husband and wife? Our statute on the subject is as follows: "Sec. 2. All property acquired after the marriage by either husband or wife, except such as may be acquired by gift, bequest, devise, or descent, shall be common property." Comp. Laws, 306.

Under a similar law in California, the courts have held that all property acquired by either spouse during the marriage by purchase is *presumed* to be common property, and that this presumption can be overcome only by clear and satisfactory proof that it was acquired by the separate funds of one or the other, and that the burden of proof lies on the party claiming the property as separate. *Smith* v. *Smith,*

12 Cal. 224, opinion by Judge Field, who cites a great many cases in support of that declaration. This doctrine is confirmed and adhered to in California, in *Meyer* v. *Kinzer*, 12 Id. 247; *Pixley* v. *Huggins*, 15 Id. 127; *Mott* v. *Smith*, 16 Id. 533; *Burton* v. *Lies*, 21 Id. 87; *Adams* v. *Knowlton*, 22 Id. 283; *Riley* v. *Pehl*, 23 Id. 71; *McDonald* v. *Badger*, Id. 393. I believe that to be the true rule in the matter.

Plaintiff offered no proof whatever to overcome this presumption, although his attention was specially called to this defect of proof by the objection made as to the order of testimony. The conveyances themselves contain no word which shows any intention to pass the property to her as her separate property. There is no proof in the case that she ever owned any separate property, or ever had any rents or profits of any separate property. There was nothing on which to found any inference that it was in any way possible that these premises might be her separate property, beyond the naked fact of her taking the property by a deed of purchase; in which case the presumption stands that it is common property until overcome by clear and satisfactory proof to the contrary. In the territory, it is not necessary for the wife to join in a deed for common property. She has no control over it whatever. A conveyance from her alone can in no case pass any legal title. Therefore, as against this defendant in ejectment, the deed was properly excluded. If the deed from defendant's wife to plaintiff was properly excluded on the ground that she had no power to convey the premises, they being common property, then it is immaterial what other and further objections to it were sustained by the court.

If one good objection was made and sustained, it does not matter whether the other objections were good or not. If only one insuperable objection to the admission of the deed was made, and remained unremoved, the exclusion of the deed can not have been error. Admit, for the argument, that all the other objections to the deed were bad, and that all the rulings in those other objections were wrong, the plaintiff was not injured thereby, because the result would have still been the same, the deed must still have been excluded for lack of power in the wife to convey common property. It is urged, *arguendo*, that the objection that the

acknowledgment of the deed was defective, having been
sustained, it was useless for the plaintiff to prove power in
the wife to convey, as the deed would still have been ex-
cluded. The transcript does not show on which of the two
grounds of objections urged (viz., 1. Defective acknowl-
edgment; 2. Defect of power to convey) the deed was
excluded. But plaintiff afterwards tried to meet the objec-
tion as to defective acknowledgment by getting a new ac-
knowledgment of the deed, but he did not try to cure the
other defect, viz., a failure to show power to convey. It is
immaterial whether he cured the first defect or not, so long
he left the second fatal defect uncured.

It is true that if the plaintiff had cured the second defect,
the court might still have excluded the deed on account of
the acknowledgment; but had the second been cured, and
had the court still excluded the deed because of the acknowl-
edgment, then, if that were error, it would be material; but
with that second defect of-lack of power to convey left un-
cured, the ruling of the court, so far as it affected the matter
of the acknowledgment, is entirely immaterial.

The sixth and last assignment of error is that the court
erred in nonsuiting plaintiff. When plaintiff rested his
case, his proof stood as above described, viz., legal title
in the defendant. When a plaintiff shows this in ejectment,
under a complaint relying solely on seisin in fee, and no
offer to amend having been made, all of which is the case
here, he must be nonsuited. I am therefore of opinion
that the judgment of nonsuit ought to be affirmed.