[Civil No. 2527. Filed September 19, 1927.]

[259 Pac. 282.]

LULU R. HALL, Appellant, v. J. W. WEATHERFORD and MARGARET J. WEATHERFORD, Appellees.

Mr. C. B. Wilson, for Appellant.

Mr. E. S. Clark, and Mr. Frank Harrison, for Appellees.

LOCKWOOD, J.—John W. Weatherford and Margaret J. Weatherford, his wife, hereinafter called plaintiffs, brought suit against Lulu R. Hall, hereinafter called defendant, to quiet title to certain premises in Flagstaff, Arizona, and to recover possession of the same from the defendant. The case was tried before a jury, which returned a general verdict, finding the issues for defendant, and that she was entitled to the possession of the premises. Plaintiffs moved for judgment *non obstante veredicto,* which motion, after due consideration, was granted, and findings of fact and conclusions of law were filed by the court, on which judgment was rendered in favor of plaintiffs. A motion for new trial was made, which was overruled on the twenty-sixth day of October, 1925, and on the twenty-third day of March, 1926, defendant gave notice of appeal from the final

judgment and from the order denying the motion for new trial.

The first question for our consideration is one of procedure. The appeal was taken from both the final judgment and the order overruling the motion for new trial. The notice of appeal was filed within six months from the rendition of judgment, but more than sixty days after the motion for new trial was overruled. Paragraph 1233, Revised Statutes of Arizona 1913, Civil Code, reads as follows:

"An appeal may be taken from a final judgment of the superior court in a civil action, or special proceeding commenced in such court, at any time within six months after the rendition of such judgment, *and from any other judgment or order at any time within sixty days, after the making of such order.*" (Italics ours.)

It is contended by plaintiffs that while it is true the appeal from the judgment is timely, that from the motion for new trial is too late, and that therefore, under the repeated decisions of this court, we can consider on the appeal only the judgment-roll, since, it is contended, the transcript of the reporter's notes is not properly before the court.

It is of course obvious that the appeal from the order denying the motion for new trial was made too late and the court cannot therefore consider it. We do not think, however, this in any way affects defendant's right to present the question of the sufficiency of the evidence or the correctness of the court's ruling in denying the motion. Paragraph 1231, Revised Statutes of Arizona, Civil Code, reads as follows:

"Upon appeal from a final judgment the court shall review all orders and rulings made by the court below, which are assigned as error, whether a motion for a new trial is made or not. If a motion for a new trial is made and denied, the court may, on

appeal from the final judgment, review the action of the court below in denying the motion, though no appeal be taken from the order denying the motion for a new trial; provided, that on appeal from a final judgment the Supreme Court shall not consider the sufficiency of the evidence to sustain a verdict or judgment in an action tried before a jury unless a motion for a new trial shall have been made.''

It will be seen therefrom that, if a motion for new trial is made and denied, as it was in this case, it is not necessary to appeal from the order denying in order to review the questions presented in the motion.

There are seven assignments of error. The first four go to the exclusion of certain testimony. The last three in effect challenge the sufficiency of the evidence to sustain the judgment. In order that we may consider them intelligently, it is necessary that we make a brief statement of facts. Taking the evidence on behalf of plaintiffs in the most favorable light to them, these facts are as follows:

Plaintiff John W. Weatherford purchased a lot in Flagstaff, Arizona, in 1890. At that time he was a single man. Four years later he and plaintiff Margaret J. Weatherford were married. Some time thereafter they purchased a lot adjoining the first mentioned and constructed on the two lots a hotel, of which they have been the owners ever since. During part of this time the hotel was operated by plaintiffs, and during the remainder it has been leased by them to various parties. In 1919 plaintiff John W. Weatherford executed a written lease covering said premises in favor of defendant, for a term of five years from May 7, 1920, she knowing at the time he was a married man. By its terms defendant was required to pay as rent $18,000, to contribute $6,500 to improvements to be made on the property and eventually reverting to plaintiffs, and to keep

the hotel in repair. She was also to provide all furniture required for the operation of the hotel, but this was to remain her property. The lease included the following clause:

"It is further agreed that the party of the second part, upon the expiration of this lease, shall have the option to renew the same for a like period at a price to be agreed upon, and shall have the preference right to the same at any price which may be agreed upon by the party of the first part."

Plaintiff Margaret J. Weatherford did not sign the lease. Her testimony in regard to her knowledge of and connection with its execution, reduced to narrative form, is substantially as follows:

"I think I first met Mrs. Hall at Ingleside, some time before November, 1919. On that occasion there was a discussion about the terms of this lease that was later executed in November, 1919. I cannot say that I did or did not take any part in the discussion. I cannot remember. I cannot remember if I did or did not make any protest or objection to them. The next time I met Mrs. Hall was down at Mr. Pugh's office and on that occasion the proposed lease was discussed. I don't think I was asked anything about it and I don't think I said anything about it. I do not remember whether it was read or not, but I do not say it wasn't. I was present at the signing of the lease, and it was signed by Mr. Weatherford and Mrs. Hall in my presence, but I was not asked to sign the lease and wasn't asked anything about it by either of the parties, and I said nothing about it. I knew from the previous discussion and the discussion there that the lease involved the property known as the Weatherford Hotel. I think I discussed it with Mr. Weatherford, but I do not know whether it was in Mrs. Hall's presence or not. I did not read the lease before it was signed, and have absolutely no recollection as to when I first read it. I discussed it before the improvements were made and after I learned they were to be made I did not say anything to Mrs. Hall about it."

Some months before the lease expired defendant took up the question of a renewal with plaintiffs. At that time Mrs. Weatherford objected to any renewal and so notified defendant, but shortly after she had given such notice, plaintiff John W. Weatherford executed a new lease to defendant at an increased rental. Mrs. Weatherford never at any time, either by silence or otherwise, acquiesced in or consented to the second lease, but at all times strenuously objected thereto.

Plaintiff's position is that the property in question was community property; that under the provisions of paragraph 2061, Revised Statutes of Arizona 1913, Civil Code, since Mrs. Weatherford did not sign the lease of 1919 it was void and in no manner binding on her; that defendant, after going into possession thereunder, was merely a tenant at will; and that plaintiffs could recover possession of the premises at any time. Defendant, on the other hand, while admitting that ordinarily this would be true, claims plaintiff Margaret J. Weatherford is estopped by her conduct from questioning the validity of the lease on this ground.

The first question of substantive law for our determination is whether or not the testimony of Margaret J. Weatherford shows that she is estopped from maintaining that the lease was invalid because she failed to sign it. This court discussed the question of estoppel *in pais* in the case of *Bryan* v. *Pinney* 3 Ariz. 412, 31 Pac. 548. In that case certain property of a decedent was sold under order of the probate court. The purchaser assigned the certificate to a third party, who was in possession for more than three years, and made valuable improvements on the premises. Decedent's widow and her grantee had full knowledge of the sale under the order of the probate court, and of the improvements placed on the property by the assignee of the purchaser,

but made no objections thereto. It was claimed that, although the decree ordering the sale of the property and the sale itself might be nullities, yet the widow and her grantee, knowing that the claim of the defendant to the property rested on that sale, by remaining silent and allowing defendant to place valuable improvements thereon, were estopped from asserting title. This court, in discussing the question of equitable estoppel, quoted approvingly from *Dickerson* v. *Colgrove,* 100 U. S. 580, 25 L. Ed. 618, as follows:

"The law upon the subject is well settled. *The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted.* Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both. This remedy is always so applied as to promote the ends of justice." (Italics ours.)

We also quoted the following language from *Wendell* v. *Van Rensselaer,* 1 Johns. Ch. (N. Y.) 344:

"There is no principle better established in this court, nor one founded on more solid considerations of equity and public utility, than that which declares that if one man, knowingly, *though he does it passively, by looking on,* suffers another to purchase and expend money on land, under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person. It would be an act of fraud and injustice, and his conscience is bound by this equitable estoppel." (Italics ours.)

In this case Margaret J. Weatherford, according to her own statement, knew that her husband and Mrs. Hall were about to execute a lease of the property; she was present at at least two meetings when the terms of the lease were discussed; she talked

it over with her husband, even though she does not remember discussing it with Mrs. Hall, and does not claim that she, at any time before it was signed, made any objection to its execution. She was present when the lease was actually signed, and still remained silent; she knew before the money was expended that, relying upon the lease, Mrs. Hall was about to expend $6,500 in making permanent improvements which would revert to plaintiffs. Yet, notwithstanding all this, at no time does she claim that she ever made any protest, either to her husband or Mrs. Hall. If such conduct does not constitute an equitable estoppel, there is no such thing known to the law. We are of the opinion that, construing the evidence of plaintiff Margaret J. Weatherford in the strongest possible manner in her favor, it shows conclusively an equitable estoppel, and that she cannot now contend that the lease of 1919 was invalid because she failed formally to execute it.

Counsel for plaintiffs have cited us to numerous cases where the courts have held that a wife is not estopped by mere silence, when her husband disposes of or encumbers community property, from afterwards asserting her rights to the property. Among these cases are the following: *Morrison* v. *Wilson,* 13 Cal. 494, 73 Am. Dec. 593; *Jackson* v. *Torrence,* 83 Cal. 521, 23 Pac. 695; *Brown* v. *Rouse,* 104 Cal. 672, 38 Pac. 507; *McNeeley* v. *South Penn Oil Co.,* 52 W. Va. 616, 62 L. R. A. 562, 44 S. E. 508; *Waldron* v. *Harvey,* 54 W. Va. 608, 102 Am. St. Rep. 959, 46 S. E. 603. On examining them, as well as others cited, of which the named ones are typical, it will be found that they are based in principle on the old doctrine of the nature of the marriage relation, and the inferiority of the wife. We, however, have taken a more modern view of the wife's rights and responsibilities. As we have stated in *Cosper* v. *Valley Bank,* 28 Ariz. 373, 237 Pac. 175:

"Development of the community property law of the western states has gone hand in hand with the general emancipation of women from the economic bonds which have so long burdened them. While under the common law the husband and wife were 'one,' and he was always the 'one,' the world has of recent years gone a long way toward recognizing that even a married woman was a human being, with most of the rights of such, and that the status of marriage partook more of the nature of a partnership than that of master and servant, or guardian and ward."

From the case of *Charauleau* v. *Woffenden*, 1 Ariz. 243, 25 Pac. 652, to that of *Schofield* v. *Gold*, 26 Ariz. 296, 37 A. L. R. 275, 225 Pac. 71, our attitude has been that the wife was an independent human being, with the full power to decide and determine for herself all questions involving her rights, and the old presumption that though before marriage, and during widowhood, she was as fully capable of managing her affairs as a man under the same circumstances, while coverture existed she lost all independent volition, knowledge and capacity, and was to be treated as an infant under guardianship, so far as Arizona is concerned, is utterly obsolete. Since such is our theory of the marriage status, cases which are based either consciously or unconsciously on the old idea of the inferiority of the female sex and the subserviency of the wife to the husband are not in point. We hold that when property rights are concerned the same rule of estoppel applies to a woman as to a man; to the wife as to the husband; to a partner in the marriage relation as to a partner in any other relation of life.

But it is said, admitting for the sake of argument that Margaret J. Weatherford is estopped from denying the validity of the lease of 1919, the renewal clause therein contained is void for the reason that it is uncertain. On examining that clause it is evi-

dent that the amount of rental to be paid in case of a renewal was to be determined in one of two ways, either by agreement of the parties, or to be fixed by plaintiff John W. Weatherford at the figure at which he was willing to lease to other parties. There is a decided conflict in the authorities as to the effect of a renewal clause where the rent is to be fixed by agreement. Perhaps the greater number of states hold such a clause to be void for uncertainty. *Keating* v. *Michael,* 154 Ark. 267, 242 S. W. 563; *Sammis* v. *Huntington,* 104 Misc. Rep. 7, 171 N. Y. Supp. 965; *Sterenberg* v. *Beach,* 219 Ill. App. 68. On the other hand, there is excellent authority to the contrary. *Young* v. *Nelson,* 121 Wash. 285, 30 A. L. R. 568, 209 Pac. 515; *Arnot* v. *Alexander,* 44 Mo. 25, 100 Am. Dec. 252.

The first line of cases is based on the theory that the courts cannot make a contract for the parties, and cannot compel them to agree upon one, and that since such is the case a provision depending upon their voluntary agreement for its effectiveness is void, *ab initio.* The reasoning on the other side is well stated in *Young* v. *Nelson, supra,* as follows:

"In such a case as this we consider the agreement for renewal one for the benefit of the lessee, otherwise it would not have been included in the lease. It may be assumed that the owner may always find a tenant for his premises, and therefore such a provision is not particularly for his benefit. The tenant is not always in such a state, and often desires such a provision in his lease. Evidently, therefore, it was intended for the benefit of the lessee and may be supposed to have formed an inducement to the original letting. . . . Manifestly, therefore, there should be some method whereby the lessee may enforce the contract for his benefit."

And it was held that an agreement for renewal would not be considered void because the amount of rental for the renewal period was left to the agree-

ment of both parties, but that a reasonable renewal value under the circumstances of the case was implied by the contract, and that, if the parties could not agree upon what was reasonable, the amount would be fixed by the court.

We are of the opinion that the reasoning of the case last quoted is the most in accord with common sense and justice. Written instruments should be construed so as, if possible, to give effect to every clause thereof, rather than to hold any of them void. As was well stated, options to renew granted to the lessee are obviously for his benefit, and it is presumed are part of the consideration which induced him to execute the lease. If we are to hold such clauses as being absolutely void, we are taking from the lessee without remuneration something for which he has paid. We should not so construe contracts if it is possible to avoid it. We hold that a renewal clause leaving the rent to be fixed by agreement implies a reasonable figure, and is enforceable, and therefore valid. Such being the case when plaintiff John W. Weatherford, in accordance with the provisions of the lease of 1919, which lease, as we have shown, Margaret J. Weatherford is estopped from questioning, came to an agreement with defendant and executed the lease of October, 1924, such latter lease was a valid one, and defendant is entitled to the possession of the premises in question, according to its terms.

This being true, it is not necessary for us to determine the other assignments of error. The judgment of the superior court of Coconino county is reversed, with instructions to render judgment in favor of the defendant in accordance with the views expressed herein.

ROSS, C. J., and McALISTER, J., concur.