[Civil No. 4079.   Filed November 20, 1939.]

[95 Pac. (2d) 983.]

VIVIAN F. NICKERSON, Appellant, v. ARIZONA CONSOLIDATED MINING COMPANY, a Corporation, GENERAL SECURITIES COMPANY, a Corporation, THE ROYAL AMERICAN CORPORATION, a Corporation, SOUTHWEST MINES DEVELOPMENT COMPANY, a Corporation, R. O. BARRETT, L. K. LINK, E. C. LOCKLEAR, FRED FORD, L. B. LeBEL and WILLIAM ALLEN NICKERSON, Appellees.

352

Messrs. Struckmeyer & Flynn, and Mr. J. Bolivar Sumter, for Appellant.

Messrs. O'Sullivan & Morgan, for Appellees.

McALISTER, J.—Vivian F. Nickerson commenced this action in June, 1936, but in January, 1938, amended her complaint by adding herself as the special administratrix of the estate of William Allen Nickerson, her husband, who had died late in 1937, as a party plaintiff. It was brought against the Arizona Consolidated Mining Company, three other corporations and five individuals, one of whom was L. K. Link, and its purpose was to quiet in her and the estate of

William Allen Nickerson title to four patented mining claims located in Yavapai county, Arizona, known as the Jessie group. From a judgment dismissing her complaint and quieting title to the claims in L. K. Link she appeals.

The substance of the complaint is that on or about November 25, 1927, the plaintiff and William Allen Nickerson acquired with community funds four patented mining claims situated in Yavapai county, Arizona, known as the Jessie group, together with improvements belonging thereto, and that on December 5, 1927, William Allen Nickerson, without the knowledge or consent of plaintiff, attempted by an instrument in writing, without her joining therein, to transfer the title to these claims to the Southwest Mines Development Company, one of the defendants herein; that on May 26, 1928, William Allen Nickerson caused to be delivered by the sheriff of Yavapai county to that corporation a deed purporting upon its face to convey to it this property; that this was done without the knowledge or consent of plaintiff and in violation of the community rights of both plaintiff and her husband in the property; that by reason of various mesne conveyances subsequent thereto title and right of possession to this property is claimed by one L. K. Link but that said claim is void and of no force, either at law or in equity.

It is further alleged that plaintiff did not discover the attempted transfer of this property until May 24, 1935, and that immediately upon learning of it she demanded of her husband, that he bring an action to have any and all clouds upon the property quieted in their community estate, but that he refused to do so; that plaintiff is informed and believes that the defendant, Arizona Consolidated Mining Company, a corporation, General Securities Company, a corporation, the Royal American Corporation, a corporation, Southwest Mines

Development Company, a corporation, R. O. Barrett, L. K. Link, E. C. Locklear, Fred Ford and L. B. LeBel claim some right, title and interest to the property but that such claim· is without right because it is based upon the attempted transfer of title to said property by William Allen Nickerson to the Southwest Mines Development Company.

To this complaint the defendant, L. K. Link, filed two pleas in bar, an answer and a cross-complaint. The first plea in bar is based upon the three and five year limitation statutes. In the second he sets up facts which he alleges estops plaintiff from asserting an interest in the property, and in both the answer and cross-complaint, in the latter of which he seeks to have title to the property quieted in him, he again pleads, along with other matters, substantially the same facts, which in effect are these: That defendant has the title to the Jessie group which his predecessors in interest acquired through a sheriff's deed dated May 26, 1928; that on, prior, and since that date plaintiff and her husband, being the owners of more than two-thirds of the outstanding stock of the Southwest Mines Development Company, have owned and controlled it, he being during this time the president and general manager of that corporation; that it took possession of the property in 1927 under a sheriff's certificate of sale purchased in the name of her husband, William Allen Nickerson, for and on its behalf, and that this certificate of sale was assigned to it; that following these transactions and during the years 1928 to 1933, inclusive, the plaintiff and her husband placed the Southwest in full possession of this property and held it out as belonging to that company; that during 1933 the Southwest sold the property to the Arizona Consolidated Mining Company, and that this latter corporation, which was also under the control of plaintiff and her husband, continued in ownership and possession

of the property, working and operating it; that plaintiff had full knowledge of all these facts and during this period made no claim of a community interest in the property; that defendant and his predecessors in interest invested large sums of money in the property and changed their position relative to it without any knowledge that plaintiff claimed any interest therein and without any objection on her part but rather with her knowledge and acquiescence.

The cross-defendant denied the allegations of the cross-complaint and particularly that she was estopped from asserting any interest in the property.

The evidence discloses these facts: The plaintiff and William Allen Nickerson were married in June, 1920, and the following summer located in Cherry, Yavapai county, Arizona, where Mr. Nickerson engaged in mining activities and acquired several mining claims. They lived in Cherry until 1925 when they moved to the Union property adjoining that composing the Jessie group then owned by the Ohio-Arizona Mining Company and located near Humboldt, and there remained until 1934. In May and June, 1926, plaintiff's husband performed work and labor upon the property of the Ohio-Arizona Mining Company at an agreed price of $900, that company being the owner of a number of unpatented mining claims as well as the Jessie group. He was not paid for this labor, so on June 4, 1927, he filed an action in *assumpsit* against that company and on the same day had an attachment issued and levied on its property, including the Jessie group. On October 22, 1927, judgment for the amount claimed, including orders foreclosing his attachment lien and directing the sale of the property to satisfy it, was rendered, and on November 25, following, the property was sold at public sale and bid in for $900 by the execution creditor, William Allen Nickerson. A certificate of sale under that date was delivered to him by

the sheriff and on December 3, 1927, a duplicate of it was filed in the office of the county recorder. Two days later, December 5, an assignment of the purchaser's right, title and interest in that certificate of sale to the Southwest Mines Development Company, which had been organized by William Allen Nickerson in 1923, was executed by the latter and filed and recorded in the office of the county recorder. The plaintiff did not join in that assignment. On May 26, 1928, pursuant to this assignment, the sheriff executed and delivered his deed conveying the property to the Southwest Mines Development Company. The plaintiff testified that she knew nothing about the assignment until October 1, 1934, when her attorney, in a letter addressed to her at Newport Beach, California, where she was then residing, informed her of it. This communication was in reply to one from her in which she had manifested "considerable concern" about the property immediately following the receipt of a telegram from her husband. She was advised in the same letter that the situation was not so serious as she might picture it, since the judgment her husband secured against the Ohio-Arizona Mining Company was community property and she had not joined in the assignment of the certificate of sale to the Southwest Mines Development Company.

It appears also that on August 1, 1927, two months after the suit against the Ohio-Arizona Company was filed and about three months prior to the rendition of judgment therein, that the Southwest Mines Development Company issued to William Allen Nickerson a certificate for 750,000 shares of its capital stock. The consideration for this stock was not then disclosed and nothing concerning the issuance of the certificate appears in the minutes of the Southwest Mines Development Company until June 3, 1929, when they show that at that meeting W. A. Nickerson presented

to the three directors present, himself, E. F. Young and Albert Oeschler, a letter signed by him offering, in consideration of the Southwest Mines Development Company's causing to be issued to him all of its capital stock, 750,000 shares, to convey to it all his right, title and interest in and to certain property, and then followed a description of that formerly owned by the Ohio-Arizona Company and purchased by him at sheriff's sale on November 25, 1927. This offer was accepted by unanimous vote.

The evidence discloses further that after plaintiff's husband purchased the Jessie claims at the execution sale late in 1927 and assigned the certificate thereof to the Southwest Mines Development Company, he and she, being the owners of nearly all the issued stock of that company, operated the mines as its property, thus, in effect, representing ownership thereof to be in that corporation. And after the property was transferred by the Southwest in December, 1933, to the Arizona Consolidated Mining Corporation in exchange for all the latter's stock, they operated it as the property of that company. The plaintiff at times acted as secretary to her husband, wrote letters for both corporations, paid out money for the Southwest Mines Development Company for work on the property and signed checks for the Arizona Consolidated Mining Company for the same purpose. She testified, it is true, that she knew nothing about the business, that her husband attended to it, that she kept house, did the cooking, washing, ironing and looked after her children, two of whom were born while living in Cherry, and that she did not know the property was transferred to the Arizona Consolidated Mining Company in 1933 by the Southwest. She stated upon the other hand, however, that she knew her husband was president of the Southwest and was attempting for it to negotiate deals for the property, that he was sell-

ing its stock, and was in Los Angeles late in 1933 endeavoring to raise money on the property, that people were coming out to look at it with a view to purchase and that she prepared meals for those who went out for that purpose; that she made no claim of a community interest to any of these persons or anyone else, though she knew or believed she had such interest from the time her husband purchased it; that, when asked, ''You never made any claim to any of these people, did you, personally?'' she replied, ''I don't know but that it is rather silly to kill off a sale just because I have an interest in it''; that she made no protest at whatever her husband did; that she was familiar with a map of the claims in the office which listed them, including the Jessie group, as the property of the Southwest, and later as belonging to the Arizona Consolidated.

Albert Oeschler, a director in the Southwest Mines Development Company, testified that he went from Cherry to the Union property with the Nickersons in 1925 and that he ''Was there all the time working around the property and working and mucking and doing everything.'' In reply to the following question concerning the Jessie claims, ''They were supposed to belong to the Southwest Mines Development Company, were they not?'' he stated, ''It all belonged to the Southwest Development Company.'' He testified further that after this company operated the property, the Arizona Consolidated Mining Company took it over and he was employed by it for some time.

E. F. Young, sister of the plaintiff and secretary of both the Southwest and Arizona Consolidated Companies, signed the deed by which the property was transferred late in 1933 from the former to the latter, and in her testimony stated that from the time the property was taken over in 1927 until the transfer she believed the Southwest had full title and that she knew

the Southwest took it over when the sheriff's certificate of sale to it was assigned by Mr. Nickerson.

Joe Martignene, who worked for the Southwest from 1930 to 1934 and from then until 1937 for the Arizona Consolidated, testified that the Jessie claims were connected with the Union, upon which the Nickersons lived, by trestle and tunnel, and that both properties were operated by the Southwest and later by the Arizona Consolidated; that he went down 250 feet on the Little Jessie; that Mrs. Nickerson was there more than Mr. Nickerson; that she generally paid him for his work and one day said to him:

"If the Southwest Mines sell it you will get your money, the cash money, and we will all have our money";

that when Mr. Nickerson was in Los Angeles in 1933 trying to sell the property she told the witness that Nick had sold it and gave him $50 to get a truck "to bring them up here"; that in 1933 the Arizona Power Company attached the property for a $2,000 power bill the Southwest owed it, and that, following the judgment in its favor, a notice of sale was posted on the mill door, about ten feet from the house, and Mrs. Nickerson saw it all the time; that when the Arizona Consolidated took the property over in 1934 and Mr. Reid became manager of it, the witness helped Mrs. Nickerson pack everything and that she said to him as she left, "I hope I don't have to come back"; that he was frequently at their house and that she answered the letters when Mr. Nickerson was in Los Angeles and when he was home she took shorthand notes from him at the house and went over to the office to transcribe them on the typewriter.

The evidence submitted discloses that the defendant is the owner of record of the four patented claims involved in the action under a regular chain of title from the United States government.

After the evidence had been fully considered, the court overruled the first and second pleas in bar and held that the plaintiff had failed to establish her cause of action but that the allegations of the answer and cross-complainant are true. Thereupon, judgment in favor of the defendant cross-complainant on his cross-complaint was awarded and title to the mining claims involved quieted in him. It is from this judgment that plaintiff appeals.

The plaintiff has assigned a number of errors but discusses them under fewer propositions of law. The defendant has filed two cross-assignments attacking the rulings denying the pleas in bar. In rendering judgment the trial court expressed the view that the $900 debt due W. A. Nickerson by the Ohio-Arizona Mining Company was community property, that the sheriff's certificate of sale vested title in the purchaser, subject to defeasance upon redemption, and hence that the assignment to the Southwest Mines Development Company was ineffectual without her signature, but it held that her actions thereafter toward the property were such that she is estopped from asserting any interest in herself. This ruling renders a consideration of the cross-assignments and of all the assignments, except that based on estoppel, unnecessary, because, if sound, and we think it is, it is immaterial whether the other errors relied on are correct or incorrect.

It is clear from the foregoing that the evidence on the question of estoppel is conflicting and would support a finding either way thereon, but the trial court accepted that which has the effect of estopping plaintiff from asserting any interest in the mining claims in herself, and this court is compelled, under the well-established rule relative to conflicting testimony, to uphold its action in that respect. The conclusion

of the court was that since the evidence discloses that the plaintiff and her husband lived adjacent to the property involved for so many years and that she was apparently fully conversant with his affairs and with the operation of the mining companies of which he was president, she is not in a position to assert any interest in herself. Notwithstanding her testimony to the contrary, the trial court concluded that under the circumstances shown by the record she had knowledge of the assignment of the certificate of sale to the Southwest Mines Development Company and that her husband, as president and manager of that company, treated the property for a number of years as belonging to it. In fact, he not only handled it in that way without any objection whatever on her part but she helped him manage it and did what she could to aid him in disposing of it as an asset of that company. After the Southwest had deeded it to the Arizona Consolidated in exchange for all the latter's issued capital stock, both plaintiff and her husband treated it as the property of that company until its management was taken over in April, 1934, by one of defendant's predecessors in interest. Under these circumstances it cannot be said that the court was not justified in holding her estopped from asserting an interest in the property. In *Hall* v. *Weatherford,* 32 Ariz. 370, 259 Pac. 282, 284, 56 A. L. R. 903, the following language used by the court in *Wendell* v. *Van Rensselaer,* 1 Johns. Ch., N. Y., 344, was approved.

"There is no principle better established in this court, nor one founded on more solid considerations of equity and public utility, than that which declares that if one man, knowingly, though he does it passively, by looking on, suffers another to purchase and expend money on land, under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against

such person. It would be an act of fraud and injustice, and his conscience is bound by this equitable estoppel.''

In this same case (*Hall* v. *Weatherford*) it was held that the doctrine of equitable estoppel applied just as much to a wife where community property rights are concerned as it does to any other person.

It is contended by the plaintiff, however, that since a duplicate of the certificate of sale was filed in the office of the county recorder on December 3, 1927, and the assignment thereof by Mr. Nickerson to the Southwest, in which the plaintiff did not join, was recorded in that office on December 6, 1927, she is not estopped, because these records gave the parties, claiming to be influenced to their injury by her conduct, a convenient and available means of ascertaining the true state of the title and constituted constructive notice thereof. They point out that the defendant Link and his grantor, R. O. Barrett, knew that Mr. Nickerson was a married man and that this fact, coupled with the failure of plaintiff to join in the assignment, constituted ample notice to them that she had not parted with her interest in the property. This contention, even though sound as a proposition of law, has no application here, for the reason that the court held in effect that the evidence shows that plaintiff knew of the transfer to the Southwest, and that this company held the property from December, 1927, until December, 1933, and then deeded it to the Arizona Consolidated Mining Company, both transfers having been made without any protest from her. Since plaintiff is estopped from asserting her interest as against the Southwest Company, it follows necessarily that she cannot assert it as against anyone whose title passed through that company. The Southwest's title being good because plaintiff is estopped from attacking it, a conveyance to some third party by that

company is equally good, since such transfer could not have had the effect of re-establishing title in her. It is immaterial, therefore, whether owners subsequent to the Southwest knew plaintiff was married or that the records of the recorder's office discloses a defect in her title.

Finding no error in the record, the judgment is affirmed.

ROSS, C. J., and LOCKWOOD, J., concur.