[No. 42983.   En Banc.   August 22, 1974.]

GRANITE EQUIPMENT LEASING CORP., *Appellant*, v.
ARTHUR J. HUTTON, JR., *et al.*, *Defendants*, DESERT
CARMEL SERVICE COMPANY, *Respondent*.

*Gale D. Barbee* and *Lynn O. Hurst* (of *Montgomery, Purdue, Blankinship & Austin*), for appellant.

*Duncan A. Bayne* and *John A. Tidwell* (of *Davis, Wright, Todd, Riese & Jones*), for respondent.

WRIGHT, J.—This case involves an action by appellant seeking to enforce the terms of a written guaranty. All defendants except Desert Carmel Service Company, the

respondent herein, confessed judgment. The action against respondent proceeded to trial. This appeal is from the trial court's judgment dismissing with prejudice appellant's action against respondent on respondent's written guaranty.

On August 29, 1969, in Seattle, Washington, a written agreement for the lease of furniture and equipment was executed between appellant, Granite Equipment Leasing, Inc., and defendants Angell, Hutton, Smith, Magnus and Corning, a copartnership known as "Bayshore Partners." The lease agreement provided for the leasing of furniture and equipment to a motel and restaurant near Waldport, Oregon, owned and operated by the above copartnership. Appellant's performance under the lease agreement was to be consummated with delivery of the leased items in Oregon.

Coincident with the execution of the lease and other written guaranties, defendants Angell and Hutton executed a written guaranty in the name of respondent, Desert Carmel Service Company, in favor of appellant guaranteeing performance of defendant "Bayshore Partners" under the terms of the lease agreement. This guaranty was accompanied by a printed corporate resolution form stating that any officer of respondent corporation was authorized to execute the guaranty in question on behalf of respondent. At the time the guaranty was executed, defendant Angell was vice-president and defendant Hutton was secretary of respondent corporation. The lease agreement, as well as the guaranty, contained clauses which made New York law applicable to each transaction. However, New York law was neither pleaded nor proved.

The parties involved in the August 29, 1969, transaction are from several different states. Appellant is a New York corporation engaged in the business of leasing personal property, with offices in Seattle, Washington, and Garden City, New York. Respondent is an Arizona corporation empowered to engage in business as a public service corporation within the state of Arizona, providing water and sewer service to a land development in that state.

On August 29, 1969, all the stock of respondent was owned by defendant Desert Carmel Development, Inc., an Arizona corporation engaged in the development of land in Arizona for homesite purposes. At that time, defendant Desert Carmel Development, Inc., was, in turn, owned by defendant Wendell-West Company, a partnership engaged in the business of land development, with its principal office located in Seattle, Washington. Corporate and financial records of respondent were maintained at the principal office of defendant Wendell-West Company. Prior to this action, defendant Wendell-West Company sold defendant Desert Carmel Development, Inc., along with respondent corporation, to a Georgia corporation.

Defendant "Bayshore Partners," comprised of defendants Angell, Hutton, Smith, Magnus and Corning, owns and operates the Pat Boone Bayshore Inn, a motel and restaurant near Waldport, Oregon. The members of this copartnership are all Washington residents with their principal place of business in Seattle, Washington; and all, except defendant Corning, are also copartners in defendant Wendell-West Company.

In response to the conflict of laws problem raised by the parties, the trial court found that Arizona, rather than Washington or Oregon, had the most significant relationship to the guaranty and respondent corporation since the impact of enforcement of the guaranty, it determined, would be felt principally in Arizona. Accordingly, the trial court applied Arizona law and concluded that under that state's law, execution of the guaranty by respondent's officers was ultra vires so as to make the guaranty void and unenforceable.

The first issue raised on appeal is whether the trial court erred in deciding Arizona law was the rule for decision of this case. This was error.

First, procedural law dictates that Washington law must be applied to the instant case. The guaranty in question contains a clause stating that the guaranty shall be interpreted in accordance with the laws of the state of New

York and that the rights and liabilities of the parties shall be determined in accordance with the laws of that state. The principal obligation, *i.e.*, the lease agreement, likewise contains a clause making New York law applicable to any litigation arising from that transaction. However, the record discloses that, although these documents were introduced into evidence, New York law was not pleaded by either party as required by RCW 5.24.040. New York law is, therefore, considered to be the same as Washington law under the rule that, unless the law of another state is specifically pleaded, it will be assumed to be the same as that of Washington. *Investment Serv. Co. v. LaLonde*, 63 Wn.2d 834, 389 P.2d 414 (1964); *Save-Way Drug, Inc. v. Standard Inv. Co.*, 5 Wn. App. 726, 490 P.2d 1342 (1971). Thus, because of the choice of law by the parties and the failure of either to plead it, Washington law governs the principal obligation, as well as the guaranty.

Second, even if the above procedural law did not exist so as to make the choice of law of the parties effective via substitution of the law of Washington for that of New York, substantive law would still dictate that Washington law must be applied to the instant case.

■ Washington has adopted the view that, absent a choice of law by the contractual parties, the validity and effect of a contract are governed by the law of the state which has the most significant relationship to the contract, except as to questions of usury and details of performance. *Baffin Land Corp. v. Monticello Motor Inn, Inc.*, 70 Wn.2d 893, 425 P.2d 623 (1967). This rule has been specifically extended to contracts of suretyship or guaranty. *Potlatch Fed. Credit Union v. Kennedy*, 76 Wn.2d 806, 459 P.2d 32 (1969).

■ Factors which may be significant in regard to a guaranty contract include the place of contracting, negotiation, and performance; the location of the contract subject matter; and the domicile, residence, and place of business of the parties. Consideration should also be given to the interests and public policies of potentially concerned states

as they relate to the transaction in question, as well as to the justified expectations of the parties as to which of the competing policies would be applicable to them. *Potlatch Fed. Credit Union v. Kennedy, supra* at 809-10.

The facts of the instant case show that the guaranty was signed in Seattle, Washington. The record indicates that it probably was also negotiated there, although no witness specifically testified to that effect. As to the place of performance, appellant has offices in Washington and New York and would expect that rent payments would be made at one of those places by the principal obligators or guarantors. The subject matter of the guaranty is the obligation of the guarantor to pay the debt of the principal debtor. Since the situs of an intangible follows the situs of the domicile of the owner, here appellant, the situs of the subject matter of the guaranty is in New York. *See In re Estate of Lyons,* 175 Wash. 115, 26 P.2d 615 (1933); *In re Estate of Grady,* 79 Wn.2d 41, 483 P.2d 114 (1971). As to the domicile, residence and place of business of the parties, appellant is a New York corporation with its principal office there. However, it also maintains an office in Seattle, Washington. Respondent is an Arizona corporation, but at the time of the transaction, certain of its corporate and financial records were maintained in Seattle, Washington, with its parent company, defendant Wendell-West Company. Furthermore, at the time of contracting, its officers and directors were Washington residents.

Application of the above factors does not merely involve the counting of contacts that the transaction has with the state. Rather, the contacts which are established within this analysis are to serve as guidelines indicating where the interests of particular states may touch the transaction in question. They are also useful in determining the expectations of the parties. *Potlatch Fed. Credit Union v. Kennedy, supra* at 810.

Concerning the interests and public policies of potentially concerned states as they relate to the transaction

in question, we find that Washington has the most direct interest in the transaction. It is contended that Arizona is the only state that will be substantially affected by the transaction since all respondent's assets, against which appellant would have to proceed in executing a judgment, are located in Arizona. But, in view of the fact that respondent corporation has been sold to a Georgia corporation, there is no assurance that all its assets will remain in Arizona. Moreover, Arizona's interest will necessarily be protected to the extent of its procedures for the regulation of the manner in which a judgment against public utilities or public service corporations may be enforced. For, while a Washington judgment is entitled to full faith and credit in Arizona, Arizona may employ its own procedures for enforcement of the judgment so long as the procedures do not discriminate against foreign judgments. *See Huntington v. Attrill,* 146 U.S. 657, 36 L. Ed. 1123, 13 S. Ct. 224 (1892).

■ On the other hand, Washington has a vital interest in regulating the actions of corporations which do business within its territorial boundaries so as to insure fair business practices therein. Respondent appeared to have the power and authority to enter into the present transaction and appellant relied to its detriment thereon. To allow respondent to now claim that its actions were ultra vires under Arizona law would defeat the fair business policies of this state and encourage foreign corporations to engage in unfair practices within this state.

Turning to the expectations of the parties, the contract itself shows that they intended New York law to be applicable to any litigation arising out of the guaranty transaction. If the choice of this law should become ineffective for any reason, the facts indicate that these parties would expect to proceed under Washington law to settle any contract difficulties. All their dealings occurred in Washington; they each maintained offices in Washington; and the officers and directors of respondent all lived in Washington.

From the foregoing it is clear that Washington is the state of the applicable law because it is the state with the

most significant relationship to the contract of guaranty. We now turn to the other issues presented by this appeal.

The second issue raised on appeal is whether the defense of ultra vires is available to respondent under Washington law so as to make the guaranty in question void and unenforceable. We hold that it is not available.

No act of a corporation shall be invalid by reason of the fact that the corporation was without the capacity or power to do such act. However, such lack of capacity or power may be asserted in a proceeding by a shareholder against the corporation, in a proceeding against the former officers and directors of the corporation or in a proceeding by the Attorney General. RCW 23A.08.040.

The instant proceeding obviously does not fall within any of the above three exceptions of RCW 23A.08.040 and, therefore, the defense of ultra vires is not available to respondent.

The third issue raised on appeal relates to the amount of attorneys' fees to which appellant may be entitled.

The guaranty provides for attorneys' fees as follows:

> Guarantor agrees to pay reasonable attorneys' fees of 15% of amount due if claim is placed with attorneys for collection, if allowed by law.

The trial court entered a judgment against all defendants, except respondent, in the sum of $100,592.18; and determined that appellant was entitled to attorneys' fees, through the time of trial, in the amount of $12,500 from all defendants, except respondent, which prevailed at trial. In its motion and affidavit for allowance of attorneys' fees, appellant contends that, if successful on appeal, it would be entitled to a judgment against respondent for attorneys' fees incurred as a result of the trial and this appeal. We agree.

■■ A provision in a contract providing for the payment of attorneys' fees in an action to collect any payment due under the contract includes both fees necessary for trial and those incurred on appeal as well. *Corinthian Corp.*

*v. White & Bollard, Inc.*, 74 Wn.2d 50, 442 P.2d 950 (1968). In the instant case, the trial court, rather than enforce the above-quoted guaranty provision, exercised its discretionary power to determine attorneys' fees incurred as a result of the trial. There is no clear showing of abuse of discretion by the trial court; *i.e.*, that the trial court exercised its discretion in a manifestly unreasonable manner. Therefore, the trial court's decision regarding this matter will not be disturbed on appeal. *See State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 482 P.2d 775 (1971).

■ An appellate court has the inherent jurisdiction to fix attorneys' fees incurred on appeal when allowed by a contract. However, it may remand the case to the trial court for the setting of the fee where circumstances require the taking of evidence as to the reasonableness of the fee to be allowed. *Brandt v. Impero*, 1 Wn. App. 678, 463 P.2d 197 (1969). Although appellant appended copies of time sheets detailing the hours incurred for professional services in connection with this appeal to its motion and affidavit for allowance of attorneys' fees, we feel more evidence is needed regarding the basis and reasonableness of the hourly rate set forth therein. Accordingly, we remand this matter to the trial court.

Judgment reversed and remanded for proceedings consistent with this opinion.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, UTTER, and BRACHTENBACH, JJ., concur.