[No. 42571-4-I. Division One. June 28, 1999.]

G.W. EQUIPMENT LEASING, INC., *Respondent*, v. MT. McKINLEY FENCE CO., INC., ET AL., *Appellants*.

[16]*See State v. Freitag*, 127 Wn.2d 141, 145, 896 P.2d 1254, 905 P.2d 355 (1995).

*Steven Ray Meeks* of *Meeks Morgan Bauer, P.L.L.C.*, for appellants.

*Brian William Esler* of *Miller, Nash, Wiener, Hager & Carlsen*, for respondent.

AGID, A.C.J. — This appeal presents the question whether an Arizona husband may enter into a contract in Washington which obligates his community property when, under Arizona law, he could not bind the community because his wife had not signed the contract as a party. We conclude that Arizona law applies in this situation and reverse the trial court's entry of summary judgment in favor of G.W. Equipment Leasing, Inc.

## FACTS

In August 1995, Washington corporations Mt. McKinley Fence Co. and G.W. Equipment entered into a leasing agreement which provided that it would be "governed by and construed at all times by the laws of the state of Washington." As security for this lease, Edward Lindstrom, Mt. McKinley's sole shareholder, signed a guaranty agreement which personally bound him to "each and every covenant and obligation" under the lease. The guaranty agreement itself reflects that Lindstrom signed and his wife Georgia witnessed the agreement in Scottsdale, Arizona, where they live.

Mt. McKinley eventually defaulted on the leasing contract, and G.W. Equipment brought suit in Washington against Mt. McKinley, Lindstrom, and "his marital community." In response to G.W. Equipment's second summary judgment motion, Lindstrom[1] admitted liability to G.W. Equipment for the claimed amounts, but contended that neither the Lindstrom marital community nor Georgia Lindstrom was liable for this debt.[2] The trial court granted G.W. Equipment's motion for summary judgment and entered judgments against McKinley, Lindstrom and the marital community, ruling that "Washington law applies to the interpretation and governance of defendant Lindstrom's guaranty contract with plaintiff, and there is juris-

---

[1]"Lindstrom" refers collectively to Mt. McKinley and Lindstrom.

[2]Georgia joined by special appearance to contest the trial court's jurisdiction over the marital community, but she is not a party to this appeal.

diction in Washington over the marital community." This appeal followed.

## DISCUSSION

■ In his "jurisdictional challenge," Lindstrom contends that the trial court had no authority to enter a judgment binding his marital community because (1) a marital community cannot be a "party" against whom judgment may be entered under CR 54, (2) the trial court did not have personal jurisdiction over Georgia Lindstrom,[3] and (3) "jurisdiction over one nonresident spouse is not sufficient to confer jurisdiction in Washington over either the other spouse or the 'marital community,' where the law of the domicile of that community bars community liability on the type of debt at issue." Later in his brief, Lindstrom clarifies that the crux of his argument is that he "does not have the power unilaterally to bind the community under Arizona statute."[4] Washington law supports this contention.

Washington and Arizona community property statutes similarly provide that a debt incurred by one spouse while acting for the benefit of the marital community is a community obligation, regardless of whether or not the other spouse approves it.[5] Arizona, however, restricts this power

---

[3] When a marital community is being sued on a contract entered into by one of the spouses, proper service on one member of the community is sufficient to bind the community. *Oil Heat Co. v. Sweeney*, 26 Wn. App. 351, 613 P.2d 169 (1980). Thus, if the marital community were liable, service on Lindstrom alone was sufficient.

[4] G.W. Equipment asserts that Lindstrom's argument "is not one of jurisdiction but rather choice of law." It also asserts that *Granite Equip. Leasing Corp. v. Hutton*, 84 Wn.2d 320, 525 P.2d 223, 72 A.L.R.3d 1172 (1974), controls this issue. That case considered an Arizona corporation's argument that, because a guaranty agreement executed by its officers in Washington was ultra vires under Arizona law, Washington courts could not enforce it. Noting that "[n]o act of a corporation shall be invalid by reason of the fact that the corporation was without the capacity or power to do such act," the court rejected its argument. *Id.* at 327. *Granite Equipment* does not apply here because the same reasoning does not apply to marital communities.

[5] *See* RCW 26.16.030; ARIZ. REV. STAT. §§ 25-214 and 215. Both parties agree that the leasing agreement benefited the Lindstrom marital community.

with respect to guaranty agreements—the transaction at issue in this case—by requiring that both spouses sign these agreements in order to bind their marital community.[6] The Arizona statute was enacted to ensure that the marital community will be bound "only by consent of the community."[7] Lindstrom analogizes his Arizona marital community to a principal/agency relationship and contends that, because Arizona law would not allow him to enter into a guaranty agreement without Georgia's express consent and because Georgia signed the contract "as a witness, not as a binding party," she is not legally bound by her husband's "unauthorized act."[8]

■ G.W. Equipment responds that "traditional choice of law principles dictate that Washington law will apply [to] the [g]uaranty." G.W. Equipment is correct that in the absence of an effective choice of law by the parties, the validity and effect of a contract will be governed by the law of the state having the most significant relationship with the contract.[9] But in *Potlatch No. 1 Fed. Credit Union v. Kennedy*,[10] the Washington Supreme Court recognized that,

[6]ARIZ. REV. STAT. § 25-214(C) provides that "[e]ither spouse separately may acquire, manage, control, or dispose of community property, or bind the community, except that joinder of both spouses is required in any of the following cases . . . . Any transaction of guaranty, indemnity, or suretyship."

[7]*Geronimo Hotel & Lodge v. Putzi*, 151 Ariz. 477, 480, 728 P.2d 1227, 1230 (1986).

[8]As an initial matter, G.W. Equipment argues that the choice of law provision in the leasing agreement is dispositive because "parties may legally contract to be bound by the law of either jurisdiction . . . ." *Escrow Serv. Co. v. Cressler*, 59 Wn.2d 38, 42, 365 P.2d 760 (1961). But as Lindstrom points out, Georgia was not a party to the original leasing agreement. Although Washington courts have not addressed this issue, Arizona courts hold that choice of law provisions in leases are not controlling on related guaranty agreements which describe duties and obligations of different people. *Phoenix Arbor Plaza, Ltd. v. Dauderman*, 163 Ariz. 27, 785 P.2d 1215 (1989). This is a logical approach.

[9]*Pacific Gamble Robinson Co. v. Lapp*, 95 Wn.2d 341, 622 P.2d 850 (1980). In *Baffin Land Corp. v. Monticello Motor Inn, Inc.*, 70 Wn.2d 893, 900, 425 P.2d 623 (1967), the Washington Supreme Court abandoned the "lex loci contractus" rule, which provided that the place of the contract's execution should determine the law applied, for the "most significant relationship" test, which considers a variety of factors to determine results which are "less arbitrary and more just."

[10]76 Wn.2d 806, 459 P.2d 32 (1969).

depending on the ultimate issue being considered, some contacts are more significant than others:

> Application of [the significant relationship] principle does not involve merely counting the contacts. Rather these contacts are guidelines indicating where the interests of particular states may touch the transaction in question. For instance, the state of contracting (the place where the last act necessary to create a binding contract was performed) may be relatively insignificant unless it is also the state of the domicile of the parties . . . in which case that state may have some real interest in protecting its residents or policing acts occurring within its borders. . . .[11]

In *Potlatch*, the court analyzed the community liability of a Washington couple on an Idaho debt incurred by the husband alone. It identified significant contacts and considered "the interests and policies" of Washington and Idaho along with the expectations of the parties. After noting that Washington's community property system "constitutes the most important element of married women's property rights," the *Potlatch* court concluded that "[t]he wife's rights to her share of the community property, and the concurrent restrictions on the husband's power to manage that property, are basic to Washington law."[12] Implicit in the *Potlatch* court's comments and holding is that when management of community property is at issue, the state

---

[11]*Id.* at 810.

[12]*Id.* at 813. The court also endorsed the California Supreme Court's observation that: "disabilities to sue and immunities from suit because of a family relationship are more properly determined by reference to the law of the state of the family domicile. That state has the primary responsibility for establishing and regulating the incidents of the family relationship and it is the only state in which the parties can, by participation in the legislative processes, effect a change in those incidents. Moreover, it is undesirable that the rights, duties, disabilities, and immunities conferred or imposed by the family relationship should constantly change as members of the family cross state boundaries during temporary absences from their home." *Id.* (quoting *Emery v. Emery*, 45 Cal. 2d 421, 428, 289 P.2d 218, 223 (1995)).

with the most significant interests is typically the state where the spouses reside.[13]

In *Colorado National Bank v. Merlino*,[14] this court reached a similar conclusion in a case involving a Washington man who executed a Colorado real estate agreement without his wife's knowledge or consent, contrary to RCW 26.16.030(4) requiring joinder for real estate transactions. After pointing out that RCW 26.16.030(4) is "designed to restrict the legal authority of a Washington spouse to contract to purchase real property without the joinder of the other spouse, and its protections are appropriately the concern of the law of the domicile[,]" the court held that "[s]ince Gary Merlino was acting outside his authority under RCW 26.16.030(4), his attempt to act for the community benefit and bind the community had no effect."[15] This reasoning applies directly here because RCW 26.16.030(4) is the Washington analogue to Arizona's Ariz. Rev. Stat. § 25-214. The Legislatures of both states decided to enact statutory joinder requirements to protect community property within their borders. In *Merlino*, the court determined that these restrictions do not evaporate when a spouse crosses the border into another state. Although this case deals with an Arizona marital community instead of a community domiciled in Washington, its underlying reasoning applies with equal force to this case.

As evidenced by *Potlatch* and *Merlino*, Washington courts apply Washington law to determine the rights and authority of Washington spouses to enter into contracts affecting their community property. For Washington courts

---

[13]*See also Pacific Gamble*, 95 Wn.2d 341, where the Washington Supreme Court determined that Colorado law should apply where a Colorado couple signed a promissory note in Colorado which related to a Colorado business, but then moved to Washington after defaulting on the note. Under those facts, it was more reasonable to conclude that, although the couple resided in Washington at the time of the action, Colorado had a more significant relationship with the contract, and the couple's rights were governed by Colorado law at the time they signed the note.

[14]35 Wn. App. 610, 668 P.2d 1304, *review denied*, 100 Wn.2d 1032 (1983).

[15]*Id.* at 620, 621.

to conclude that residents of other community property states are bound by Washington community property law as well, rather than the law of their own state, would be illogical and unjust. The Arizona Legislature has enacted a statute which prohibits one spouse from entering into guaranty contracts without the other spouse's consent. Arizona spouses, therefore, may not alter the rights and liabilities of their marital communities, irrespective of the protective policies of their domiciliary states, by choosing to contract in another forum and contractually consenting to the application of that forum's laws.

Although not controlling here, Arizona courts have adopted this approach. In *Lorenz-Auxier Financial Group, Inc. v. Bidewell*,[16] the Arizona Court of Appeals considered the question of whether an Oregon husband's separate debt in Arizona could be charged to his marital community when Oregon law does not permit community obligation on separate debt. After observing that "the property rights of a husband and wife are governed by the law of the couple's matrimonial domicile at the time of the acquisition of the property[,]"[17] the court held that Oregon law should apply. It found "no authority in Arizona or Oregon that permits one spouse, acting extraterritorially without the other spouse's consent, to enlarge his dispositional power over the other spouse's property beyond the limits imposed by the law of the domiciliary state."[18] It added that the non-contracting spouse "obtained a measure of protection through these statutes that her husband could not unilaterally sign away." Although "[h]er husband may have agreed that *he* would be bound by Arizona law,[ ] he did not thereby bind his wife."[19] The court went on to speculate about the issue presented in this case, noting that if the reverse conclusion were true, one spouse "could defeat

---

[16]160 Ariz. 218, 772 P.2d 41 (Ct. App. 1989).

[17]*Id.* at 220.

[18]*Id.* at 221.

[19]*Id.*

Arizona's protective requirement that both spouses must consent when binding community property to guarantee a third party's obligation, [ARIZ. REV. STAT.] § 25-214(C)(2)."[20]

Having determined that Arizona law should govern the question of whether Lindstrom's marital community was bound by his execution of the guaranty agreement, the next question is whether, under Arizona law, Georgia ratified the agreement by signing it as a witness.[21] G.W. Equipment contends that even if Arizona law applies, Georgia's signature is evidence of her ratification of the agreement. In *All-Way Leasing, Inc. v. Kelly*, the Arizona Court of Appeals addressed a creditor's argument that a wife ratified her husband's lease agreement by having a general knowledge of its terms and accepting its benefits. The court stressed that although Arizona law permits joinder by ratification, courts "must . . . be cautious when applying the general law of ratification to cases arising under [ARIZ. REV. STAT.] § 25-214(C), which is intended to protect the marital community."[22] The court explained that the statute "draws a bright and readily understandable line: one who wishes to bind a marital community in a statutorily designated transaction must get both spouses to sign. . . . This clear policy would be circumvented, and the bright line of required joinder blurred, if the courts too readily permitted ratification to be inferred."[23] G.W. Equipment, as the party moving for summary judgment, had the burden of producing evidence sufficient to support its inference that Georgia signed with full knowledge of the contract's contents. Because it did not provide such evidence, we cannot accept its argument that Georgia acquiesced to the guaranty's

---

[20]*Id.*

[21]G.W. Equipment's estoppel argument fails because there is no evidence that G.W. Leasing relied on an understanding that the Lindstrom marital community would be obligated by the lease. *See All-Way Leasing, Inc. v. Kelly*, 182 Ariz. 213, 217, 895 P.2d 125, 129-30 (1994).

[22]*All-Way Leasing, Inc. v. Kelly*, 182 Ariz. 213, 216, 895 P.2d 125 (1994).

[23]*Id.* G.W. Equipment contends that *Hall v. Weatherford*, 32 Ariz. 370, 259 P. 282, 284-85, 56 A.L.R. 903 (1927) controls here. But *Hall* was decided in 1927, well before ARIZ. REV. STAT. § 25-214(C) was enacted.

terms. Although there are two reasonable inferences which could be drawn from Georgia's signing the agreement, we must view these inferences in the light most favorable to Lindstrom—the nonmoving party.[24]

 As a final matter, Lindstrom requests attorney fees under RCW 4.84.330, which mandates an award of reasonable attorney fees to the prevailing party where a contract or agreement so provides.[25] The spouse representing a marital community is entitled to attorney fees where the community prevailed in an action to enforce a contract providing for attorney fees, even though their spouse's separate estate is found liable.[26] Although Lindstrom and his marital community are the prevailing parties in this action, G.W. Equipment asserts that they are not entitled to attorney fees because Lindstrom requested fees on behalf of Georgia—a nonparty. G.W. Equipment is correct that Lindstrom should have requested fees on his own behalf as the representative of his marital community. We therefore deny his request for fees.

Because Arizona law applies to this contract, and because G.W. Equipment has failed to meet its burden of proving that Georgia ratified the guaranty agreement, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

COLEMAN and WEBSTER, JJ., concur.

---

[24]*Iwai v. State*, 129 Wn.2d 84, 96, 915 P.2d 1089 (1996).

[25]*Singleton v. Frost*, 108 Wn.2d 723, 727, 742 P.2d 1224 (1987).

[26]*Klaas v. Haueter*, 49 Wn. App. 697, 708, 745 P.2d 870 (1987).